**Forrest Wayne CLICQUE,**
**Petitioner-Appellant,**

v.

**UNITED STATES of America,**
**Respondent-Appellee.**

No. 74–1322.

United States Court of Appeals,
Fifth Circuit.

June 13, 1975.

Rehearing Denied Sept. 9, 1975.

924

James Chrisman Phillips, Austin, Tex. (Court-appointed), for petitioner-appellant.

William F. Sanderson, Jr., Asst. U. S. Atty., Dallas, Tex., for respondent-appellee.

Before GOLDBERG and RONEY, Circuit Judges, and LYNNE, District Judge.

GOLDBERG, Circuit Judge:

The indictment in the present case tells all that needs to be known of the case's pre-trial posture. A Grand Jury in the Northern District of Texas charged:

On or about October 2, 1972, in the Dallas Division of the Northern District of Texas, FORREST W. CLICQUE, defendant, knowingly did use the mails for mailing, carriage in the mails and delivery of non-mailable matter, that is a certain envelope addressed to . . . and containing an obscene, lewd, lascivious, indecent, filthy and vile letter beginning 'Dear Johnny' and ending 'Mark A.', *the said letter not being further described in this indictment as the same would defile the records of this Court.*

A violation of Title 18, United States Code § 1461.

(emphasis added).

The defendant retained his own counsel and then entered a plea of guilty to the charge, on January 19, 1973. Before accepting the guilty plea the judge engaged the defendant in a colloquy which consisted, in relevant part, of this:

Mr. Clicque, before the Court asks you to enter your plea to this offense, I want to advise you that upon a finding of GUILTY after trial or upon a plea of GUILTY, the maximum penalty provided by law would be a fine not to exceed $5,000 or a term of imprisonment not to exceed five years or both the fine and the imprisonment. Do you understand that?

THE DEFENDANT CLICQUE: Yes.

THE COURT: Mr. Clicque, did you hear the reading of the Indictment?

THE DEFENDANT CLICQUE: Yes, ma'am.

THE COURT: Did you understand it?

THE DEFENDANT CLICQUE: Yes, ma'am.

THE COURT: Have you had an opportunity to talk with your attorney?

THE DEFENDANT CLICQUE: Yes, ma'am.

THE COURT: And he has advised with you in regard to the trial or your plea?

THE DEFENDANT CLICQUE: Yes, ma'am.

THE COURT: You also have been advised as to the maximum penalty?

THE DEFENDANT CLICQUE: Yes, ma'am.

THE COURT: Understanding what the Charge is and understanding what the maximum penalty is, do you wish to plead GUILTY or NOT GUILTY?

THE DEFENDANT CLICQUE: GUILTY, Your Honor.

THE COURT: Do you make that plea freely and voluntarily?

THE DEFENDANT CLICQUE: Yes, ma'am.

THE COURT: Has anyone talked you into pleading GUILTY against your own belief about it?

THE DEFENDANT CLICQUE: No, ma'am.

THE COURT: You make that plea simply because you know yourself to be GUILTY?

THE DEFENDANT CLICQUE: Yes, ma'am.

THE COURT: Do you admit that on or about October 2 you addressed an envelope to Johnny . . . and that envelope contained an obscene, lewd, indecent, and vile letter?

THE DEFENDANT CLICQUE: Yes, ma'am.

THE COURT: I find you GUILTY then on your plea of GUILTY, and you will be sentenced— . . .

■ The letter was not reproduced in the indictment. There is no indication that the district court judge looked at it. The defendant was not questioned about its contents when he pleaded guilty. The judge accepted the plea on the basis of the indictment and conversation and then sentenced Clicque to five years in prison. Petitioner did not initiate any direct appeal from his conviction. But seven months after his sentence was imposed, in September 1973, Clicque initiated a collateral attack on his conviction under 28 U.S.C. § 2255. He contends both that his conviction violated his first amendment rights in that the judge did not make an independent assessment of the obscenity of the materials, and that the trial judge could not have had a factual basis for accepting his plea, and, therefore, the arraigning judge violated Rule 11 of the Federal Rules of Criminal Procedure[1]. His petition was denied on the merits by the district court on January 3, 1974 and Clicque appealed to this Court in February of 1974.[2]

■ We believe that Clicque's first amendment rights may have been infringed in that he may have been sent to jail for protected writings. We conclude

---

1. The Rule provides, in relevant part: "The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

2. A predicate to our consideration of these issues seems to be that the petitioner raised them below. See United States v. Grene, 5 Cir. 1972, 455 F.2d 376; Chunn v. Clark, 5 Cir. 1971, 451 F.2d 1005; but see, Collier v. Estelle, 5 Cir. 1974, 488 F.2d 929 at 931. Here, the issues were presented to the district court by Clicque's petition. First, petitioner claimed that he was unfairly treated in that he was convicted under 18 U.S.C. § 1461 rather than 18 U.S.C. § 1737. While § 1461 refers to obscene matter, § 1737 refers to "sexually related" matter. In order to ascertain that the convict's first amendment rights were not infringed, the district court would have had to have examined the material in question. Second, in order to ascertain that the conviction under the obscenity statute was valid, the district court would have had to assure itself that a valid guilty plea was entered; this would have resulted in a review of the procedure used in the acceptance of the plea.

that in this constitutionally sensitive area, the convicting court was under a constitutional duty to assure itself of the unprotected nature of Clicque's writing.

 The question here is whether the First Amendment will allow the district court to accept a plea of guilty to a violation of 18 U.S.C. § 1461[3] without first ascertaining whether the writings are obscene. Courts are extremely cautious in applying a statute in an area fraught with constitutional considerations, to make sure that the application does not result in a denial of constitutional rights in the particular case. The application of this principle in the obscenity area is vividly illustrated by Justice Brennan's opinion in Jacobellis v. Ohio, 1964, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793, in which he said:

Application of an obscenity law to suppress a motion picture thus requires ascertainment of the "dim and uncertain line" that often separates obscenity from constitutionally protected expression.

. . . . .

It has been suggested that this is a task in which our Court need not involve itself. We are told that the determination whether a particular motion picture, book, or other work of expression is obscene can be treated as a purely factual judgment on which a jury's verdict is all but conclusive, or that in any event the decision can be left essentially to state and lower federal courts, with this Court exercising only a limited review such as that

needed to determine whether the ruling below is supported by "sufficient evidence." The suggestion is appealing, since it would lift from our shoulders a difficult, recurring, and unpleasant task. But we cannot accept it. Such an abnegation of judicial supervision in this field would be inconsistent with our duty to uphold the constitutional guarantees. Since it is only "obscenity" that is excluded from the constitutional protection, the question whether a particular work is obscene necessarily implicates an issue of constitutional law.

Such an issue, we think, must ultimately be decided by this Court. Our duty admits of no "substitute for facing up to the tough individual problems of constitutional judgment involved in every obscenity case."

. . . Hence we reaffirm the principle that, in "obscenity" cases as in all others involving rights derived from the First Amendment guarantees of free expression, this Court cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected.

378 U.S. at 187, 84 S.Ct. at 1677, 12 L.Ed.2d at 797–99 (citations and footnotes omitted). This Court has adopted Justice Brennan's view of the responsibility to make an independent assessment of the facts:

Furthermore, it is now settled that on review of First Amendment cases, the proper course for an appellate court to take is: to make "an independent con-

---

**3.** 18 U.S.C. § 1461 reads, in relevant part:

*Mailing obscene or crime-inciting matter*
Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance;

. . . . .

Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.

Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section [or section 3001(e) of title 39] to be nonmailable, or

knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.

stitutional judgment on the facts of the case as to whether the material involved is constitutionally protected." United States v. Gates, 5 Cir. 1973, 481 F.2d 605 at 606, (quoting Jacobellis).

■ The Supreme Court has by no means carved an exception to the need for this independent judicial scrutiny merely because the defendant himself thought his material was racy. On the contrary, in United States v. Cote, 1973, 413 U.S. 915, 93 S.Ct. 3061, 37 L.Ed.2d 1037, the Court suggests that our interpretation is the correct one. Cote involved a case in which a defendant pleaded guilty to mailing obscene material, and then took a direct appeal. In the case's original appearance before this Court, 470 F.2d 755, Cote claimed that as a matter of law the material was not obscene. In a short affirmance, we said:

> While represented by retained counsel unusually experienced in these matters, Cote pled guilty. Thus, he admitted each and every averment of the indictment. [citation omitted]. We further note that at the time this plea was received, the careful trial judge pointed out that it was his opinion such a plea would finally and completely determine the issue of obscenity vel non of the material.

470 F.2d at 756.

Thus the Court held adversely to the appellant on the contention that the appellate court must independently assess the obscenity of the material even when defendant pleads guilty.

The Supreme Court reversed our decision and remanded the case. The memorandum opinion merely says "Petition for writ of certiorari granted, judgment vacated and case remanded to the Court of Appeals for further consideration in light of Miller v. California, 1973, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 [other citations omitted]."

The Court was thus ordering a reconsideration in light of the substantive standards it had recently enunciated. On remand, we adopted the interpretation that an obscenity conviction must be supported by an independent factual assessment according to the prevailing legal standards, even where a guilty plea has been entered. We said, at 485 F.2d 575:

> Pursuant to the order of the Supreme Court . . . we have made an "independent constitutional judgment on the facts of the case as to whether the material is constitutionally protected." [citing Jacobellis] [4]

The present case is before us on the basis of the constitutional requirements of court review of obscenity convictions and thus it stands in no different posture than did *Cote*.

■ The rule that a guilty plea does not excuse the court from reviewing the actual material on which the plea is based applies with equal force to the district court judge as it does to the appellate judge. The rule requires an "independent assessment" of the facts before a conviction may be upheld in order to see whether the *material* is *constitutionally protected*. The rule is not procedural and based on evidentiary burdens on appeal, but rather goes to whether there was a commission of a crime at all in an area in which wrongful punishment directly infringes on a constitutional right. In the present case, the district court did not make such an assessment before ac-

---

4. This phraseology verifies the fact that we were undertaking our First Amendment duties on the *Cote* remand and that the Court did not think that the remand was fostered because the Supreme Court believed that it had not properly undertaken its Rule 11 duties. For, Rule 11 only demands of the appellate court that it see that the evidence before the district court fell within "the ambit" of criminal activity; in the *Cote* remand, the Court undertook the more rigorous de novo review generally demanded in first amendment cases.

The remand of *Cote* by the Supreme Court also effectively overruled that part of United States v. Fragus, 5 Cir. 1970, 422 F.2d 1244, opinion supplemented, 428 F.2d 1211, which stood for the proposition that no independent determination of obscenity was necessary upon a guilty plea.

cepting the guilty plea; therefore the conviction cannot stand.[5]

Reversed and remanded.

I am joined in the foregoing analysis by my brothers Judges Roney and Lynne who would decide this case without reaching any other ground. Thus the Court is unanimous on reversing the judgment below and remanding the case to the district court for further proceedings consistent with this opinion.

I believe, however, that an additional basis exists for granting the writ in this case, in that Clicque's Rule 11 rights were infringed. I now address myself to those concerns.

Clicque alleges that Rule 11 of the Federal Rules of Criminal Procedure was violated in that the district court could not have been satisfied that there was a factual basis for his plea.

## I.

Since there was no direct appeal in this § 2255 case, and the basis of the Rule 11 attack on the conviction is statutory, there is a strong presumption against review in our Court. In Sunal v. Large, 1947, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982, two men were convicted of not submitting to induction into the Armed Services, a statutory violation. Neither took a direct appeal. A subsequent Supreme Court decision demonstrated, however, that the defense Sunal and Kulick attempted to raise at trial, but which was barred to them by the judge, was worthy of admission. Sunal and Kulick initiated a § 2255 motion after this intervening case came down, and ultimately the Supreme Court granted certiorari. The Court noted the substantive import of the earlier case for these two petitioners, and yet affirmed their conviction. The Court noted:

> The normal and customary method of correcting errors of the trial is by appeal. Appeals could have been taken

in these cases, but they were not. . . . So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal. . . . There have been, however, some exceptions. That is to say, the writ has at times been entertained either without consideration of the adequacy of relief by the appellate route or where an appeal would have afforded an adequate remedy. Illustrative are those instances where . . . the trial or sentence by a federal court violated specific constitutional guarantees. It is plain, however, that the writ is not designed for collateral review of errors of law committed by the trial court— the existence of any evidence to support the conviction, . . . and other errors in trial procedure which do not cross the jurisdictional line.

332 U.S. at 177, 178–79, 67 S.Ct. at 590–91, 91 L.Ed. at 1986, 1987.

In Hill v. United States, 1962, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417, where a convict brought no direct appeal after his conviction, the Court succinctly stated:

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."

368 U.S. at 428, 82 S.Ct. at 471, 8 L.Ed.2d at 421.

---

**5.** The requirement for the district court would seem to be the same as that for the appellate court. It must look at the materials and assess them according to the criteria given us by the Supreme Court. The guilty plea still obvi-

ates the need to have specific "beyond a reasonable doubt" proof on the other statutory elements of the crime, or to have evidentiary hearings for the determination of various elements of the crime.

The Court's views were re-expressed in the recent case of Davis v. United States, 1974, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109. In that case, petitioner refused to report for induction and was found guilty of violating 50 U.S.C.App. § 462(a). He brought a direct appeal to the Ninth Circuit and the case was remanded in light of an intervening Supreme Court case. The district court held that the Supreme Court decision was inapplicable and therefore did not affect his conviction. On appeal, the Ninth Circuit affirmed. After that affirmance, and while Davis' case was pending in the Supreme Court, the Ninth Circuit changed its view of the law. The Supreme Court denied certiorari in Davis' case, but the Circuit refused a rehearing, and Davis petitioned again; the Supreme Court took the case. In holding that an issue determined against a petitioner on direct appeal could be relitigated under § 2255, the Court construed the general question of petitions under that statute:

> Moreover, there is no support in the prior holdings of this Court for the proposition that a claim is not cognizable under § 2255 merely because it is grounded in the "laws of the United States" rather than the Constitution. It is true, of course, that in Sunal v. Large, 332 U.S. 174 [67 S.Ct. 1588, 91 L.Ed. 1982] (1947), the Court held that the non-constitutional claim in that case could not be asserted to set aside a conviction on collateral attack. But Sunal was merely an example of "the general rule . . . that the writ of habeas corpus will not be allowed to do service for an appeal." Id., at 178 [67 S.Ct., at 1590, [91 L.Ed. 1982]]. "Appeals could have been taken in these cases but they were not." Id., at 177 [67 S.Ct., at 1590 [91 L.Ed. 1982]]. The Court was careful to point out that "if Sunal and Kulick had pursued the appellate course and failed, their cases would be quite different. But since they chose not to pursue the remedy which they had, we do not think they should now be allowed to

> justify their failure by saying they deemed any appeal futile." Id., at 181 [67 S.Ct., at 1592 [91 L.Ed. 1982]]. Moreover, "[t]he case [was] not one where the law was changed after the time for appeal had expired." Ibid. Thus, Sunal cannot be read to stand for the broad proposition that non-constitutional claims can never be asserted in collateral attacks upon criminal convictions. Rather, the implication would seem to be that, absent the particular considerations regarded as dispositive in that case, the fact that a contention is grounded not in the Constitution but "in the laws of the United States" would not preclude its assertion in a § 2255 proceeding.

417 U.S. at 345, 94 S.Ct. at 2304, 41 L.Ed.2d at 118–19 (footnote omitted).

In Halliday v. United States, 1969, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16, however, a case in which the petitioner had brought no direct appeal after his conviction but had initiated a § 2255 attack on the *statutory basis* of his conviction some years later, the Supreme Court considered the retroactivity of the rule of McCarthy v. United States, 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, that a person convicted after a faulty Rule 11 plea may replead. This Court has substantively considered in the same procedural context as that presented here, several complaints that Rule 11 was violated because of a lack of a factual inquiry: there was no direct appeal from the guilty plea; there was a subsequent 28 U.S.C. § 2255 motion; yet the Court accepted jurisdiction over this statutory claim. *See* Hall v. United States, 5 Cir. 1974, 489 F.2d 427; Warren v. United States, 5 Cir. 1974, 488 F.2d 862; Jimenez v. United States, 5 Cir. 1973, 487 F.2d 212; Reed v. United States, 5 Cir. 1973, 471 F.2d 721.

While none of these cases has explicitly dealt with the reasons behind carving an exception for Rule 11 to the need to bring a direct appeal, they are not hard to find. For, there is a very strong interest in protecting a person from con-

viction for a crime where there is no evidence to show that he is guilty of it.

The Fifth Circuit has noted the validity of the polar statement of this proposition in Stinson v. United States, 5 Cir. 1963, 316 F.2d 554 at 555: "This rule, however, [precluding § 2255 attacks on voluntary guilty pleas] should not be so extended as to prevent inquiry being made under a Section 2255 motion where it is asserted, or to deny relief if it is established, that the uncontradicted facts disclosed by the record unequivocally demonstrate that the acts committed do not constitute the offense charged in the indictment or information."

In Thompson v. Louisville, 1960, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654, petitioner pleaded innocent but, after trial was found guilty in Louisville, Kentucky police court of loitering and disorderly conduct. The Supreme Court found that there was no evidentiary basis for conviction under the statute. The Supreme Court posed the question:

The ultimate question presented to us is whether the charges against petitioner were so totally devoid of evidentiary support as to render his conviction unconstitutional under the Due Process Clause of the Fourteenth Amendment. Decision of this question turns not on the sufficiency of the evidence, but on whether this conviction rests upon any evidence at all.

. . . . .

Thus we find no evidence whatever in the record to support these convictions. Just as "Conviction upon a charge not made would be sheer denial of due process," so is it a violation of due process to convict and punish a man without evidence of his guilt.

362 U.S. at 199, 206, 80 S.Ct. at 625, 629 (footnotes omitted).

The Supreme Court has voided several statutes containing provisions which have inferred guilt of one crime from proof of another, on the ground that such provisions violated the due process clause of the Fifth Amendment. *See* Leary v. United States, 1969, 395 U.S. 6,

89 S.Ct. 1532, 23 L.Ed.2d 57; United States v. Romano, 1965, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210; Tot v. United States, 1943, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519. Justice Harlan said in *Leary*:

The upshot of Tot, Gainey [380 U.S. 63, 13 L.Ed.2d 658], and Romano is, we think, that a criminal statutory presumption must be regarded as "irrational" or "arbitrary," and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.

A difference between these cases and *Hall, Warren, Jimenez, Reed,* and *Clicque* is that the defendants in the latter cases have all admitted committing crimes. But the Supreme Court has indicated a skepticism over presumptions which allow a person to be convicted of a crime for which no proof of commission has been presented. If the fear is that such a deduction will lead to many erroneous convictions then that fear is applicable to the presumption that a set of acts occurred because the defendant has pleaded guilty as well as to presumptions from one set of facts to another. Rule 11 itself poses the question whether such an admission can serve as a surrogate factual basis.

There is a difference here, but it is one of degree: while a matter of speculation, it is probable that more among those who plead guilty have committed a crime than among those who have committed a set of acts related to the ones making up a crime. The volitional guilty plea itself indicates that defendant and his counsel believe that the facts would, at least, allow a reasonable jury to find against him. In *Leary* and its progenitors, defendants were prohibited by the statute from making a case by case adjudication of whether or not they had committed the actual crime.

This difference may be great enough so that there could be some question as to whether Rule 11 is constitutionally compelled, an issue we need not reach

here and which was specifically left open by the Supreme Court in McCarthy, *supra,* and Halliday, *supra.* But the difference is not one which so mitigates the importance of the question that we may foreclose review. For, the guilty plea, without more, may not allow us to say we are substantially assured of the defendant's guilt. It is not unlikely that a large number of defendants are unaware of the exculpatory nuances of the law under which they believe they have committed a crime. This is especially true where individual elements of the crime are each independent preconditions to conviction and each necessary of proof, or where the acts themselves are measured in fine degree when assessing whether a crime has taken place.

Thus, in keeping with Halliday, *supra,* and the cases in this Circuit, I believe we should reach the Rule 11 issue in this case, even though there was no direct appeal.

## II.

The Rule 11 law as to the factual basis upon which the district court must base its acceptance of a plea is fairly clear. The trial judge must ascertain that defendant's "conduct on the occasions involved was within the ambit of that defined as criminal", United States v. Bethany, 5 Cir. 1974, 489 F.2d 91; Jiminez v. United States, 5 Cir. 1973, 487 F.2d 212. There is no set formula for making such an evaluation. The Court may engage in a discussion with the defendant, United States v. Gearin, 5 Cir. 1974, 496 F.2d 691; or the prosecutor may read a set of facts to the defendant and the defendant may admit under oath that they are true, Ruiz v. United States, 5 Cir. 1974, 494 F.2d 1; or the court may look to a *factually precise* indictment, Jiminez, *supra.*

In the present case we find none of these elements. The indictment merely related that an "obscene" letter had been sent by Clicque to another; at trial, the judge merely asked if defendant had sent an "obscene" letter. The district court made no attempt to ascertain if

the facts—the contents of the letter—fell within the ambit of criminal activity. There is no evidence that the judge ever saw the letter. Thus Rule 11 was violated by the district court when it accepted the guilty plea in the present case. *See* United States v. White, 5 Cir. 1973, 483 F.2d 71. The Supreme Court has held that when Rule 11 is violated the remedy to be applied on appeal is to allow the defendant to plead anew. McCarthy v. United States, 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418. I would thus allow Clicque to plead anew on this basis also.