**UNITED STATES of America, Appellee,**

**v.**

**AMERICAN THEATER CORPORA- TION and Richard Ottis Berry, Appellants.**

**No. 75–1143.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1975.

Decided Oct. 14, 1975.

Rehearing and Rehearing En Banc Denied Dec. 12, 1975.

OBSCENITY ISSUE

 Under the teaching of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) and *Jenkins v. Georgia,* 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974), an appellate court has the obligation to independently determine whether the questioned material is obscene under the following standards:

* * * (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, * * * (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller v. California, supra,* 413 U.S. at 24, 93 S.Ct. at 2615.

 After a careful review of the record, we are convinced that "Champagne Party" and "(X) The Club (X)" are obscene within the meaning of the above cited cases.

Counsel stipulated that these films:

* * * depicted adult men and women participating in various sex acts including sexual intercourse with penetration, fellatio, cunnilingus, and masturbation. These acts were committed heterosexually and homosexually between couples and in groups. On several occasions, semen was ejaculated and then spread on the women's body.[2]

Michael Clutter, Atlanta, Ga., for appellants.

Paul W. Madgett, Asst. U. S. Atty., Omaha, Neb., for appellee.

Before MATTHES, Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

American Theater Corporation and Richard Berry appeal from their conviction by a jury of knowingly transporting by common carrier in interstate commerce two obscene motion pictures entitled "Champagne Party" and "(X) The Club (X)" in violation of 18 U.S.C. § 1462.[1] We affirm.

Three issues are raised on appeal. American Theater and Berry contend that neither film is obscene as a matter of law and that both are protected expression under the First Amendment. Berry asserts that there is insufficient evidence to show that he had knowledge of the contents of the films and, therefore, his conviction must be reversed as the scienter requirements set forth in *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), have not been met. American Theater contends that the taxing of the costs of prosecution upon it after conviction is an unconstitutional burden and an infringement of its rights guaranteed by the Fifth and Sixth Amendments.

1. 18 U.S.C. § 1462 states:

 * * * Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—

 (a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or

 * * * * * *

 Whoever knowingly takes from such express company or other common carrier any matter or thing the carriage of which is herein made unlawful—

 Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.

2. In light of counsels' stipulation of the contents of these films and in light of the expert testimony as to the lack of value in these films, the Court based its decision on the record presented to it and did not view the films, a practice followed recently in *United States v. Stanley Marks et al.,* 520 F.2d 913 (6th Cir. 1975).

We find little in the record to support the appellants' contention that notwithstanding the conduct these films depict, they have "serious literary, artistic, political, or scientific value." While the appellants' expert testimony indicated that they have some such value, the government's expert testified to the contrary. The jury accepted the expert testimony of the latter and we independently concur with that opinion.[3]

## THE SCIENTER REQUIREMENT

Appellant Berry contends that there is insufficient evidence to satisfy the scienter requirement enunciated in *Hamling v. United States, supra*:

> * * * It is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributes, and that he knew the character and nature of the materials. To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law. Such a formulation of the scienter requirement is required neither by the language of 18 U.S.C. § 1461 or by the Constitution.

*Id.*, 418 U.S. at 123–124, 94 S.Ct. at 2910. *Accord, United States v. Friedman*, 506 F.2d 511, 516–517 (8th Cir. 1974).

■ The following evidence was presented at trial from which the jury could find that Berry had knowledge of the contents, nature and character of these films: (1) Berry was listed as the registered agent of American Theater Corporation in its Nebraska Articles of Incorporation; (2) Berry was in fact, if not in name, the manager of the Pussy-cat Theater, where these films were consigned and where "Champagne Party" was shown; (3) the Pussycat Theater showed exclusively "X" rated movies to "adults only" patrons; (4) Berry ordered the films for the theater and instructed the projectionist which films to show; and (5) films from the same distributor had been sent to Berry at the Pussycat Theater for several years in containers similar to the one in which "Champagne Party" and "(X) The Club (X)" were received.

We believe this evidence to be more than sufficient to support the jury's determination that Berry had knowledge of the contents, nature and character of these films.

## TAXATION OF COSTS

■ Appellant American Theater also contests the taxing of the cost of prosecution upon it under 28 U.S.C. § 1918(b).[4] It asserts that the taxing of prosecution costs upon an unsuccessful criminal defendant impermissibly burdens a defendant's Fifth Amendment right not to plead guilty and its Sixth Amendment right to trial by facing it with an additional financial burden measured by the costs incurred by the prosecution in presenting its case which are then passed on to the defendant upon conviction.

We find no merit to this contention. In our view, the government has the right to tax the cost of prosecution to an unsuccessful, non-indigent defendant in accordance with the provisions of 28 U.S.C. § 1918(b) as long as it does so in a nondiscriminatory manner.

In this case, no claim is made by American Theater that it is indigent or that the costs here were not taxed in strict conformity with the statute.[5] Nor

---

3. We note that the appellants did not object to the jury instructions given, and we find them to have accurately and fairly set forth the standards enumerated in *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), set forth above.

4. 28 U.S.C. § 1918(b) states:

 (b) Whenever any conviction for any offense not capital is obtained in a district court, the court may order that the defendant pay the costs of prosecution.

5. We note that the appellants failed to appear at the hearing before the District Court Clerk concerning the amount of costs taxed, and also failed to appeal the Clerk's decision to the trial court as is their right under Rule 54(d) of the Federal Rules of Civil Procedure.

has it developed facts which would tend to show that it is a member of a class that is being invidiously discriminated against. The claim here is a much broader one, *i. e.,* that no costs can be taxed against an unsuccessful non-indigent criminal defendant.

The appellants cite no authority for this unique proposal. Our research has failed to develop any authority in support of it. To the contrary, a number of state courts have upheld state statutes providing for the taxing of costs of prosecution against varied constitutional attacks.[6] Moreover, the Supreme Court, without discussing the precise issue raised here, has upheld an Oregon recoupment statute which includes a provision taxing a convicted defendant the expenses "specially incurred by the state in prosecuting the defendant" when it appears after trial that he has assets which may be reached. *Fuller v. Oregon,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974).

In holding that no constitutional deprivation has occurred, we note the concern that Congress has shown indigent defendants with the passage of the Criminal Justice Act of 1964, as amended, 18 U.S.C. § 3006A, and the concern that the federal judiciary has shown these same defendants. *See Dennett v. Hogan,* 414 U.S. 12, 94 S.Ct. 18, 38 L.Ed.2d 13 (1973) (right of indigent defendants to appointed counsel on appeal); *Roberts v. LaVallee,* 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) (right of an indigent defendant to a free transcript); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel in criminal cases).

Affirmed.

## ORDER DENYING PETITION FOR REHEARING EN BANC

The petition for rehearing en banc in the above case is denied by five of the judges voting in favor of the denial. Three of the judges vote in favor of the rehearing en banc.

Lay, Circuit Judge, joined by Bright and Henley would grant the petition for rehearing en banc for the following reasons:

We respectfully dissent from the denial of the rehearing en banc. The affirmance of the judgment of conviction in an "obscenity case" without an independent assessment by this court of the motion pictures involved is a serious abdication of judicial review.

As the Supreme Court stated in *Jacobellis v. Ohio,* 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964):

[I]n "obscenity" cases as in all others involving rights derived from the First Amendment guarantees of free expression, this Court cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected.

378 U.S. at 190, 84 S.Ct. at 1679.

Once again we deal with the "dim and uncertain line" dividing protected expression from that which may properly be subjected to governmental restraint. The Supreme Court has cautioned that "sensitive tools" be used to carry out the "separation of legitimate from illegitimate speech". *Speiser v. Randall,* 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958). In *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) complex guidelines

---

**6.** *See State v. Young,* 238 So.2d 589 (Fla.) *appeal dismissed,* 400 U.S. 962, 91 S.Ct. 366, 27 L.Ed.2d 381 (1970); *State v. Thomson,* 188 Kan. 171, 360 P.2d 871 (1961); *Kincaid v. Commonwealth,* 200 Va. 341, 105 S.E.2d 846 (1958); *Marquardt v. Fisher,* 135 Or. 256, 295 P. 499 (1931); *Daniel v. Daniel,* 116 Wash. 82, 198 P. 728 (1921); *McKee v. State,* 142 Tenn. 173, 218 S.W. 233 (1920). *But see Ex Parte* *Coffelt,* 93 Okl.Cr. 343, 228 P.2d 199 (1951) (where the court reversed an order taxing costs as it found those monies were not used to defray prosecution expenses but were for a parole fund) and *Ex Parte Carson,* 143 Tex. Cr.R. 498, 159 S.W.2d 126 (1942) (where the court reversed an order taxing costs as it found the monies were used to maintain a law library).

were set forth and as an ultimate safeguard, all reviewing courts were required to undertake an independent review of obscenity decisions. Chief Justice Burger emphasized the necessity of independent review:

> If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary.

413 U.S. at 25, 93 S.Ct. at 2615.

In *Roth v. United States,* 354 U.S. 476, 487, 77 S.Ct. 1304, 1310, 1 L.Ed.2d 1498 (1957), the Court said the "sex and obscenity are not synonymous." The Supreme Court later explained that this required "[a] reviewing court . . . of necessity, [to] look at the context of the material, as well as its content." *Kois v. Wisconsin,* 408 U.S. 229, 231, 92 S.Ct. 2245, 2247, 33 L.Ed.2d 312 (1972).

In *Clicque v. United States,* 514 F.2d 923 (5th Cir. 1975), the defendant pleaded guilty to obscene writing. The Fifth Circuit reversed on the ground that the trial judge had an independent obligation to determine whether the material was constitutionally protected. The court said:

> The rule that a guilty plea does not excuse the court from *reviewing the actual material* on which the plea is based applies with equal force to the district court judge as it does *to the appellate judge.* The rule requires an "independent assessment" of the facts before a conviction may be upheld in order to see whether the *material is constitutionally protected.*
>
> . . . . .
>
> The requirement for the district court would seem to be the same as that for the appellate court. It must look at the materials and assess them according to the criteria given us by the Supreme Court.

514 F.2d at 927, 928 n. 5 (emphasis added).

Much of the sexual conduct set forth in the stipulation finds its way into the best-selling books and popular movies of today. Unless one actually reads a book or views a motion picture the contextual use of the described conduct cannot be evaluated.

Under the obscenity guidelines defined in *Miller,* cautious exercise of judicial judgment is the ultimate safeguard of First Amendment freedoms. This court now holds a stipulation describing the sexual content of movies to be conclusive proof that the movies are unprotected, "hardcore" pornography. In effect, we take judicial notice of the constitutional fact of obscenity. In doing so we break new and dangerous terrain. Our judgment at all times is indeed a fallible one. This is especially so when we exercise it without seeing or hearing the subject matter involved. I realize that this obligates us to view obscene and distasteful material. Yet whether this material is in fact obscene or whether it falls within what should be the jealously guarded protective cloak of the First Amendment we can know only after we look at the material itself. In this case, we will never know, for the court today insulates the jury's verdict from appellate review. More is required of us in the exercise of our power and responsibility of judicial review. As stated by Mr. Justice Brennan:

> It has been suggested that this is a task in which our Court need not involve itself. We are told that the determination whether a particular motion picture, book or other work of expression is obscene can be treated as a purely factual judgment on which a jury's verdict is all but conclusive, or that in any event the decision can be left essentially to state and lower federal courts, with this Court exercising only a limited review such as that needed to determine whether the ruling below is supported by "sufficient evidence." The suggestion is appealing, since it would lift from our shoulders a difficult, recurring, and unpleasant task. But we cannot accept it. Such an abnegation of judicial su-

pervision in this field would be inconsistent with our duty to uphold the constitutional guarantees. Since it is only "obscenity" that is excluded from the constitutional protection, the question whether a particular work is obscene necessarily implicates an issue of constitutional law. See *Roth v. United States, supra,* 354 U.S., at 497–498, 77 S.Ct. [1304], at 1315–1316 (separate opinion). Such an issue, we think, must ultimately be decided by this Court. Our duty admits of no "substitute for facing up to the tough individual problems of constitutional judgment involved in every obscenity case."

378 U.S. at 187–88, 84 S.Ct. at 1678.

We would require this court to review the film to pass upon the First Amendment issue. Our decision stands as an unwieldy and dangerous precedent.