UNITED STATES of America, Plaintiff-Appellee,

v.

Lawrence PRINCE, Screenco, Inc., Climatrol Corporation and Emery Findley, Jr., Defendants-Appellants.

No. 75–3116.

United States Court of Appeals, Fifth Circuit.

June 9, 1976.

Lawrence E. Hoffman, Miami Beach, Fla., for Prince & Screenco.

Joel Hirschhorn, Miami, Fla., for Climatrol & Findley.

Robert W. Rust, U. S. Atty., Miami, Fla., Carl D. Lawson, Samuel R. Simon, Dept. of Justice, Washington, D. C., Thomas E. Kauper, Asst. Atty. Gen., John J. Powers, III, Atty., Barry Grossman, Robert B. Nicholson, Antitrust Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before GEWIN, COLEMAN and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge:

Appellants, two individuals and two corporations were indicted for violations of Section One of the Sherman Act, 15 U.S.C. § 1. The indictment was based on an alleged agreement among the appellants to allocate accounts and fix prices in restraint of trade. The district judge sentenced the individuals to two months' imprisonment and one year of probation and fined them a total of $40,000 after adjudging them guilty following his acceptance of their pleas of *nolo contendere.* Following acceptance of their *nolo* pleas, and their subsequent convictions, the corporations, Screenco, Inc. and Climatrol Corp.,[1] were fined a total of $48,000. Appellants seek relief in this court from the district court's denial of their motions to withdraw their *nolo* pleas or to mitigate their sentences and for a new trial. We affirm.

The appellants were indicted on May 21, 1974. They first entered pleas of not guilty and proceeded to trial; Prince and Findley each testified in his own behalf. Five witnesses testified for the government. Lee Latham, a former employee of Climatrol, apparently was one of the principal prosecution witnesses.[2]

Upon completion of the trial, the jurors retired to deliberate and subsequently requested and received a transcript of Lee Latham's testimony. Thereafter, the foreman reported that they were deadlocked; the trial judge gave the "*Allen* charge" and directed them to continue to deliberate. Two hours later the jury announced that a verdict still had not been reached, and the trial judge declared a mistrial.

Appellant Findley's health was extremely poor and his physicians advised him against undergoing the rigors of a second trial. At a conference among the appellants and their attorneys, Findley informed the others of his intention to withdraw his not guilty plea and enter a plea of *nolo contendere.* Additionally, the appellants were advised of the government's position that, unless they all entered *nolo* pleas, the prosecution

---

1. Screenco and Climatrol are two of the largest manufacturers and installers of screen enclosures in Southern Florida. One of the individual appellants, Lawrence Prince, is Screenco's chief executive; Emery Findley, the other individual appellant, is Climatrol's chief executive.

2. This conclusion is based on uncontroverted assertions in the appellants' briefs. The transcript of this trial was not made a part of the record on appeal.

would require that all, including Findley, be retried. At this meeting the appellants also were informed of an article entitled "Tougher Antitrust Policy: Would It Curb Inflation?"[3] Their retained counsel informed them, by means of computations based on this article, that in 93% of the antitrust cases in which the defendants plead *nolo,* the resulting fines were minimal and no actual imprisonment resulted.

Accordingly, appellants filed motions to change their pleas from not guilty to *nolo contendere.* The alleged reasons for the decision were Findley's poor health and the "Tougher Antitrust Policy" article.[4] The pleas were accepted at a hearing on June 5, 1975, before the same judge who had presided at appellants' trial. At the hearing defense counsel explicitly stipulated that the transcript of the earlier trial was a "sufficient factual basis for acceptance of" the *nolo* pleas. The court informed appellants of the maximum sentence authorized

by the statute[5] and carefully determined that the pleas were knowingly, voluntarily and intelligently entered with the advice of retained counsel and that no plea bargains had been made. He also advised appellants of the rights they were waiving by not proceeding to trial, including the rights of cross-examination and of utilizing compulsory process to obtain witnesses on their behalf.

*Prior to their sentencing* on July 10, 1975, appellants learned that Gene Latham, brother of Lee Latham, and one Robert Lipof were prepared to give sworn testimony that Lee Latham had perjured himself at the trial, and was not even present at the meeting where the alleged illegal agreement was reached.[6] At the time of sentencing, the trial judge was advised of this development, *but neither of the appellants moved to withdraw his* nolo *plea.*

Subsequent to the imposition of their sentences, however, appellants moved for a

---

3. Address by Peter Max, Vice President of National Economic Research Associates, Inc., in Washington, D.C., January 22, 1975 (before the D.C. chapter of the National Association of Business Economists).

4. Apparently, this article conveyed to appellants and their attorneys the impression that penalties for criminal antitrust violations were generally quite lenient. This is one legitimate conclusion that can be drawn from the article.

   However, the author's theme is that, although the maximum criminal penalties *provided for* in the antitrust laws might be sufficient to deter violations, these maximums are never *actually imposed* on convicted violators, who rarely are imprisoned at all. Author Max goes on to assert that increasing the frequency of the actual *imposition* of jail sentences and more severe fines are desirable methods of enhancing the efficacy of the criminal antitrust system. He also suggests that the government should be less willing to accept pleas of *nolo contendere* in antitrust prosecutions in order to augment the effectiveness of private civil antitrust actions.

   Accordingly, the sentences handed down by the district court in this case, although contra to the historical trend noted by Max, actually are in harmony with his recommendations. For an excellent discussion of trends in prosecutions and sentences for "white-collar" crimes, including antitrust violations, see "White-Collar Justice: A BNA Special Report on White-Collar Crime," 44 U.S.L.W. No. 40

(April 13, 1976) (Part II) ("white-collar" crime costs the consumer an estimated $40 billion per year—not including antitrust violations—and this figure is 200 times the amount stolen by all the bank robbers in this country in 1974).

5. For the offenses charged in the May, 1974 indictment, appellants (both the individuals and the corporations) were subject to fines not exceeding *$50,000* each. The individual defendants additionally were subject to imprisonment not exceeding *one year*; convictions under § 1 were *misdemeanors* at that time.

   On December 21, 1974, however, § 1 was amended to make violations of sections 1 to 7 *felonies* punishable by fines not exceeding *$1,000,000* for corporate defendants and *$100,000* for individual defendants. Individuals also are subject to *three years'* imprisonment under the amended act. 15 U.S.C. § 1 (Supp.1976).

6. Appellant Prince's affidavit stated that he learned of Gene Latham's willingness to give this testimony on the eve of entering his *nolo* plea. At oral argument, however, there was some indication that Prince had learned of this only on the eve of sentencing. Findley has always maintained that he learned of this fact only on the eve of sentencing. It is our conclusion that whether Prince learned of Gene Latham's position on the eve of entering his plea or on the eve of sentencing makes no difference for purposes of resolving this appeal. Hence, we treat the contentions of Prince and Findley in the same manner.

new trial, or for mitigation of their sentences, or to withdraw their *nolo* pleas.[7] The district court denied these motions, stating:

> The court must observe that defendants' motions to withdraw their pleas [of] nolo contendere and for a new trial are a classic example of wanting to eat one's cake and have it too. The defendants are willing to plead and have sentence imposed by the court, but if it doesn't suit their fancy then they feel free to seek relief from the consequences of their plea. Defendants less privileged would not be so bold.
>
> The court does not take pleas of guilty or nolo contendere lightly; neither should the defendants. They entered into them advisedly and there was a substantial basis on which the court would accept the pleas . . . [T]he sentences imposed and the term of incarceration is of a minimal nature, namely, only 60 days' confinement. This is hardly a disparate sentence even if most other antitrust violations are punished only by a fine.

## I. *Motions for a New Trial*

■ Having plead *nolo contendere,* appellants waived their right to trial. *Cf. United States v. Forrest,* 356 F.Supp. 343 (W.D.Mich.1973). Just as the validity of a guilty plea is not properly tested by a motion for a new trial, *Williams v. United States,* 290 F.2d 217 (5th Cir. 1961), similarly a plea of *nolo contendere* is not properly challengable, at least as to non-jurisdictional and non-constitutional grounds, by such a motion. *Cf. Dillon v. United States,* 113 F.2d 334 (8th Cir.), *cert. denied,* 311 U.S. 689, 61 S.Ct. 71, 85 L.Ed. 445 (1940). *See generally Lott v. United States,* 367 U.S. 421, 426, 81 S.Ct. 1563, 1566, 6 L.Ed.2d 940, 944 (1961). Accordingly, the district court

did not err in denying appellants' motions for a new trial.

## II. *Motions to Withdraw Pleas or for Mitigation of Sentences*

■ Contrary to appellants' assertion, Rule 11 does not require that the district court find a factual basis for a plea of *nolo contendere,* as opposed to a plea of guilty.[8] *United States v. Wolfson,* 52 F.R.D. 170, 174–76 & nn. 9–10 (D.Del.1971), *aff'd memo,* 474 F.2d 1340 (3d Cir. 1973); 1 C. Wright, *Federal Practice & Procedure, Criminal,* § 177 at 390–91 (1969). In any event, the stipulation by defense counsel at the *nolo* hearing concerning the earlier trial adequately establishes that a factual basis for the appellants' *nolo* pleas existed.

■ Findley's contention that his punishment is cruel and unusual is without merit. The sentence is well below the statutory maximum; the district court took into account the state of Findley's health, and utilized a pre-sentence report. *United States v. Brager,* 474 F.2d 598 (5th Cir.), *cert. denied,* 414 U.S. 846, 94 S.Ct. 111, 38 L.Ed.2d 93 (1973); *United States v. Rojas-Colombo,* 462 F.2d 1091 (5th Cir. 1972), *cert. denied sub nom., Navarro v. United States,* 410 U.S. 990, 93 S.Ct. 1507, 36 L.Ed.2d 188 (1973).

■ Accordingly, since appellants' 32(d) motions to withdraw their *nolo* pleas were made after sentencing, the only remaining question before this court is whether the district court abused its discretion in refusing to permit appellants to withdraw their *nolo* pleas despite their assertion of manifest injustice.[9] *See United States v. Shapiro,* 222 F.2d 836 (7th Cir. 1955); *United States v. Preston Trucking Co.,* 364 F.Supp. 515 (N.D.Ohio 1973). The mere

---

**7.** On July 21, 1975.

**8.** *Compare* 18 U.S.C. Rule 11(b) (*nolo* plea) with *id.* Rule 11(f) (guilty plea).

**9.** Rule 32(d) of the Federal Rules of Criminal Procedure provides that:

> A motion to withdraw a plea of guilty or *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.
>
> 18 U.S.C. Rule 32(d).

fact that appellants' sentences were harsher than many of those brought to their attention by their attorneys does not evidence manifest injustice. *See United States v. Cravatas,* 330 F.Supp. 91, 100–01 (D.Conn. 1971) (affirmed by Second Circuit from the bench). There has been no assertion that appellants' trial counsel were incompetent. Had the appellants moved to withdraw their pleas before sentencing, this case might stand on a different footing.

Here, however, appellants were aware of the potentially helpful witnesses and what they would testify to before the imposition of their sentences—but they made no motion to withdraw their *nolo* pleas at that time. Neither manifest injustice nor an abuse of discretion is shown merely because appellants chose to test the water and found it too fervid. They made an intelligent and voluntary decision not to go to trial despite the evidence that potentially impeached Lee Latham.

Considerations of mercy and leniency must be addressed to the court below. This court has no authority to reduce sentences. The sentencing court may remit all or part of the fines or may eliminate or modify the jail terms. Appellants have 120 days after receipt by the district court of this court's mandate in which to file a motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C. Rule 35. *See Lott v. United States,* 309 F.2d 115, 126–27 (5th Cir. 1962), *cert. denied,* 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 498 (1963).

AFFIRMED.