# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-11161

United States Court of Appeals
Fifth Circuit

**FILED**

November 29, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOHN R. FARRAR,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before BARKSDALE, DENNIS, and CLEMENT, Circuit Judges.*

RHESA HAWKINS BARKSDALE, Circuit Judge:

John Farrar pleaded *nolo contendere* to one count of possessing, while in federal prison for a child-pornography offense, obscene depictions of a minor engaged in sexually-explicit conduct (images), in violation of 18 U.S.C. § 1466A(b)(1). Although he was sentenced to the ten-year statutory minimum for repeat offenders, under 18 U.S.C. § 2252A(b)(2), the court ordered the sentence to run concurrently with Farrar's prior sentence, with the new sentence to run from the date of his offense. Farrar challenges his conviction and sentence, asserting: the images he possessed are not obscene; and his sentence violates the Eighth Amendment. Primarily at issue is whether we

---

*Judge Dennis concurs in the judgment only.

must review those images to determine whether they are obscene. AFFIRMED.

## I.

In 2007, Farrar was sentenced to 180 months' imprisonment, after pleading guilty to six counts of child pornography. In May 2015, while he was in prison for those child-pornography offenses, guards found in his work-station "seven hand-drawn images depicting the [sexual] exploitation of minor females" and two hand-written books, describing sexual abuse of minors. Farrar admits purchasing the images from other inmates and writing the books.

Farrar was indicted on one count of possessing six obscene depictions of a minor engaging in sexually-explicit conduct, in violation of 18 U.S.C. §§ 1466A(b)(1) & (d)(5), which requires proof of "a visual depiction of any kind, including a drawing . . . that . . . (1)(A) depicts a minor engaging in sexually explicit conduct; and (B) is obscene". Farrar requested the district court's consent to plead *nolo contendere*.

As discussed *infra*, the magistrate judge (MJ) accepted the Government's offer of proof, and Farrar personally declined to contest that offer, apologizing for the court's having to view the images. Subsequent to Farrar's assuring the MJ he was not "try[ing] to hide behind the law and try[ing] to come out with some appeal issue", the MJ recommended the district judge accept Farrar's *nolo contendere* plea.

The district judge accepted the recommendation and, over Farrar's objection under the Eighth Amendment, sentenced him to the ten-year minimum required by 18 U.S.C. §§ 1466A(b)(1) and 2252A(b)(2). But, despite Farrar's being sentenced to that ten-year minimum, the court ordered his sentence to run concurrently with the child-pornography sentence he was serving, with the sentence to run from the date of the offense, May 2015, rather

No. 16-11161

than the date of sentencing, July 2016.  Farrar admits that, as a result, he will serve an additional four-and-a-half-years beyond what he is serving for his 2007 child-pornography conviction.

## II.

Farrar challenges both his conviction and sentence.  For the former, he contends: the images to which he pleaded *nolo contendere* to possessing are not obscene; and, although he pleaded *nolo contendere*, we are required to decide whether the images are obscene.  His sentence is contested under the Eighth Amendment on two bases:  it is grossly disproportionate to his crime *as applied*; and, a ten-year minimum for repeat-offenders in possession of obscene material is *categorically* disproportionate.

## A.

In contesting his conviction stemming from his *nolo contendere* plea, Farrar claims the images he possessed are not obscene within the meaning of 18 U.S.C. § 1466A and the First Amendment.  Along that line, Farrar cites Supreme Court, and our court, precedent for the proposition that he is entitled to an independent judicial review by our court to determine whether the images are obscene. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 508 n.27 (1984); *Miller v. California*, 413 U.S. 15, 25 (1973); *United States v. Ragsdale*, 426 F.3d 765, 780 (5th Cir. 2005); *Penthouse Int'l, Ltd. v. McAuliffe*, 610 F.2d 1353, 1364 (5th Cir. 1980); *Clicque v. United States*, 514 F.2d 923, 926–27 (5th Cir. 1975); *United States v. Gates*, 481 F.2d 605, 605–06 (5th Cir. 1973); *United States v. Thevis*, 484 F.2d 1149, 1155 (5th Cir. 1973).  He contends the review is mandated, even though: he did not contest obscenity in district court, and, instead, as shown *infra*, affirmatively agreed the images are obscene, apologized for the court's having to view them, and advised the court he was not "try[ing] to hide behind the law and try[ing] to come out with some appeal issue".

3

No. 16-11161

A *nolo contendere* plea, permitted by Federal Rule of Criminal Procedure 11, is also referred to as a plea of "no contest". As the Court has explained,

> [a]lthough it is said that a plea of nolo contendere means literally I do not contest [the charge], and is a mere statement of unwillingness to contest and no more, it does admit every essential element of the offense (that is) well pleaded in the charge. Hence, it is tantamount to an admission of guilt for the purposes of the case, and nothing is left but to render judgment, for the obvious reason that in the face of the plea no issue of fact exists, and none can be made while the plea remains of record.

*Lott v. United States*, 367 U.S. 421, 426 (1961) (internal quotations omitted).

In addition, Rule 11, and our court's opinion in *Prince*, foreclose a factual basis' being required for a *nolo contendere* plea. *United States v. Prince*, 533 F.2d 205, 208 (5th Cir. 1976). Rule 11 distinguishes guilty pleas from *nolo contendere* pleas: "Rule 11 does not require that the district court find a factual basis for a plea of nolo contendere, as opposed to a plea of guilty". *Id.* at 208. Rule 11(a)(3) states that, "[b]efore accepting a plea of nolo contendere, the court must consider the parties' views and the public interest in the effective administration of justice". Fed. R. Crim. P. 11(a)(3). By contrast, for a guilty plea, Rule 11(b)(3) requires the court "determine that there is a factual basis for the plea". Fed. R. Crim. P. 11(b)(3).

Even though a factual basis is not required for a *nolo contendere* plea under Rule 11, "[g]enerally, a challenge to the legal sufficiency of an undisputed factual basis [for a plea] is a straightforward question of law, reviewed *de novo*". *United States v. Butler*, 637 F.3d 519, 521 (5th Cir. 2011) (internal quotations omitted). And, the court's decision to accept a *nolo contendere* plea is reviewed for abuse of discretion. *United States v. Smith*, 417 F.3d 483, 486 (5th Cir. 2005); *see also United States v. Bearden*, 274 F.3d 1031, 1035 (6th Cir. 2001). In addition, the Government urges we instead review the

4

decision to accept the plea under the more limited standard for plain error: "where a defendant does not raise a challenge to the adequacy of the factual basis underlying [his] guilty plea in the district court . . . this court reviews for plain error". *Butler*, 637 F.3d at 521 (internal quotation omitted).

Of course, no authority need be cited for the well-established rule that we, not the parties, determine our standard of review. In this instance, we *sua sponte* first review *de novo*, to determine whether the doctrines of judicial estoppel or waiver bar Farrar's challenge to his conviction.

Following the images and books being found in May 2015, and after Farrar was indicted that November, he presented the MJ with a memorandum expressing his intent to plead *nolo contendere* and listing the elements of the charged offense. They include, *inter alia*, defendant's possessing an image that is obscene under the three-part *Miller* test for obscenity. *Miller*, 413 U.S. at 24 ("(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value") (internal quotations omitted)).

Farrar stated in his memorandum that, because "twelve unlucky members of the community [as the jury] . . . must view these images and make a determination of whether these particular images are obscene . . . how can [he] do anything other than enter a plea of *nolo contendere*"? Consistent with that position, he stated: he would not contest the factual basis underlying the charge; and, instead, "[he] will not and does not object to this Court accepting the government's offer of proof to support this Court's acceptance of this plea of *nolo contendere*".

No. 16-11161

He also stated he had considered making a facial challenge to the constitutionality of 18 U.S.C. § 1466A, but decided not to do so, "[i]n hopes of appearing before [the district court] as soon as possible . . . in hopes of receiving the same sentence as [a fellow inmate]—[who] appeared before [the court] with an almost identical case and received a mandatory minimum sentence of ten-years of imprisonment that [the court] ordered to be served concurrent to the sentence that [the inmate] was already serving". Therefore, Farrar stated he would "knowingly forgo[] that time consuming and most likely fruitless argument" about the statute and plead *nolo contendere*.

At the plea hearing before the MJ, Farrar waived his right to enter a plea before the district court. The MJ explained Farrar's constitutional rights and the consequences of his *nolo contendere* plea, commenting that, "[g]enerally, a defendant who is accused of a crime cannot plead [*nolo contendere*] unless he is actually guilty of that offense". The MJ questioned Farrar extensively regarding his *nolo contendere* plea to ensure it was entered into knowingly and voluntarily. The Government read the charges against him and elements of the offense, which, of course, included obscenity.

Farrar admitted "that there [was] evidence in this case of the commission by [Farrar] of these essential elements"; his counsel stated "[h]e doesn't dispute that the government can prove . . . each of these elements beyond a reasonable doubt"; and Farrar stated he understood the "effect of [his] no contest plea [would be] the same as a guilty plea", and acknowledged that, because he was a repeat-offender, his sentence carried a mandatory minimum of ten, and a maximum of 20, years, with a possible $250,000 fine. Nevertheless, Farrar pleaded *nolo contendere*.

In Farrar's "Notice Regarding Entry of a Plea of Guilty", he had crossed out the word "guilty" five times and inserted "no contest". The MJ expressed reservations about the *nolo contendere* plea because, "in 15 and a half years as

No. 16-11161

a prosecutor and now six as a judge, I have never seen [a *nolo contendere* plea]. And I have confirmed that neither has [the district judge]".  Farrar addressed the MJ's concern by stating his "goal [was] not to try to hide behind the law and try to come out with some appeal issue.  That's the kind of thing [that] only comes back and haunts people later".

Moreover, even though not required to establish a factual basis under Rule 11, the Government submitted an offer of proof for the evidence it could prove beyond a reasonable doubt:  in sum, Farrar was serving a prison sentence for child-pornography offenses when found in possession of obscene images depicting the sexual abuse of minors.  The Government again described in detail the six images it deemed "obscene" and submitted them as exhibits.

Importantly, the MJ asked "[whether] the defendant [had] any objection to [the] government's offer of proof".  Farrar and his counsel each responded: "No, Your Honor".  Farrar's counsel apologized for the court's having to view the images, stating: "I'm sorry you have to look at those drawings", and Farrar stated "So am I, Your Honor".

In the MJ's report and recommendation, after providing a detailed description of the images and the two books found in Farrar's workstation, the MJ recommended there was "competent and credible evidence establishing each essential element of the offense charged".  The MJ further recommended the district judge accept Farrar's *nolo contendere* plea, and pronounce him guilty of possession of the obscene images.  The district judge accepted that plea, based on the MJ's recommendation.

1.

In the light of the above description of the plea hearing, including, most especially, the comments, and positions taken, by Farrar and his counsel, the immediate, and quite obvious, question is whether Farrar is judicially estopped from pursuing his obscenity challenge on appeal.  Judicial estoppel is an

No. 16-11161

equitable doctrine applied in the court's discretion to "prevent[] a party from asserting a position in a legal proceeding that is contrary to a position previously taken by him in the same or some earlier legal proceeding". *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993) (internal quotations omitted).

The central, extremely important purpose of the doctrine is "to protect the integrity of the judicial process and to prevent unfair and manipulative use of the court system by litigants". *Id.* at 379. In that regard, the Supreme Court has listed a number of rationales for the doctrine to include "prevent[ing] the perversion of the judicial process", "prohibiting parties from deliberately changing positions according to the exigencies of the moment", and "prevent[ing] parties from 'playing fast and loose with the courts'". *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (quoting *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990); *McCaskey*, 9 F.3d at 378; and *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3d Cir. 1953)); *see also Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 490 (5th Cir. 2016) (preventing "assert[ion of] contradictory positions for tactical gain").

"Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire*, 532 U.S. at 750 (internal quotations omitted). Accordingly, there are no "inflexible prerequisites or [] exhaustive formula[s]". *Gabarick v. Laurin Maritime (America) Inc.*, 753 F.3d 550, 553 (5th Cir. 2014) (quoting *New Hampshire*, 532 U.S. at 751). "Because the doctrine is equitable in nature, it should be applied flexibly, with an intent to achieve substantial justice. . . . Application of the doctrine of judicial estoppel should be guided by a sense of fairness, with the facts of the particular dispute in mind." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (internal quotation omitted).

No. 16-11161

Notwithstanding the doctrine's being "applied flexibly", *id.*, our court has identified three "requirements" for judicial estoppel:  the party's position must be "plainly inconsistent with [its] prior position"; the party must have convinced "a court [to] accept[] the prior position"; and the party must not have "act[ed] inadvertently".  *Trinity Marine Prods., Inc.*, 812 F.3d at 490 (quoting *Reed*, 650 F.3d at 574); *see also Gabarick*, 753 F.3d at 553; *and United States v. Cluff*, 857 F.3d 292, 301 (5th Cir. 2017).  And, the Supreme Court has provided an additional "factor":  "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped".  *Zedner v. United States*, 547 U.S. 489, 504 (2006) (quoting *New Hampshire*, 532 U.S. at 750–51).

a.

As a threshold matter, we must determine whether judicial estoppel can be applied to a criminal defendant.  Because our court has never decided this question, but has assumed the doctrine may be applied to the Government in a criminal case, we consider how the doctrine has been applied in this situation by other courts, starting of course, with the Supreme Court.

The Court considered applying judicial estoppel to estop a criminal defendant's claiming a violation of the Speedy Trial Act of 1974.  *Id.* at 492–93; 18 U.S.C. §§ 3161–3174.  But, after citing the general principles of judicial estoppel, the Court ruled "[n]one of [defendant's acts] gives rise to an estoppel".  *Zedner*, 547 U.S. at 505.  On the other hand, the Court did not foreclose the possibility a criminal defendant could be estopped.  *Id.*

The tenth circuit followed the "minority viewpoint" in rejecting the doctrine until 2005, but now applies it in the light of the Court's decision in *New Hampshire*. *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1070 (10th Cir. 2005) (applying doctrine in the light of *New Hampshire* and deciding 42 U.S.C. § 1983 plaintiff was judicially estopped from asserting facts inconsistent with

guilty plea, because, *inter alia*, "to allow Plaintiffs to accept the benefit of the Pleas in Abeyance and, in the next breath, sue for civil damages stemming from their arrest for crimes they admittedly committed would clearly undermine the integrity of the judicial system"); *United States v. 162 MegaMania Gambling Devices*, 231 F.3d 713, 726 (10th Cir. 2000) (following "minority viewpoint" not accepting doctrine).

At least two courts have stated the doctrine, in certain instances, does not apply against a criminal defendant. The first circuit stated: "Judicial estoppel . . . is not applicable to bar a criminal defendant from later asserting a claim based on innocence either on direct appeal or on habeas corpus, even when such a claim rests on facts that contradict the criminal defendant's in-court and sworn representations". *Thore v. Howe*, 466 F.3d 173, 183 (1st Cir. 2006) (citing *Morris v. California*, 966 F.2d 448, 453–54 (9th Cir. 1991) ("[n]o circuit has ever applied the doctrine of judicial estoppel to bar a criminal defendant from asserting a claim based on innocence, either on direct appeal or on habeas corpus")). Nevertheless, the first circuit in *Thore* ruled it was not an abuse of discretion to hold a 42 U.S.C. §1983 plaintiff was judicially estopped from asserting a position inconsistent with his prior guilty plea. *Id.* at 187; *see also State v. Ellison*, 550 P.2d 101, 103 (Ariz. Ct. App. 1976) (not applying estoppel against criminal defendant because "the State suggests no precedent for the application of an estoppel theory to bar the assertion of constitutional rights in a criminal case, although the concept of judicial estoppel is not unknown to the civil law").

The fourth circuit estopped a criminal defendant from contradicting statements made in his guilty plea, because, *inter alia*, the trial court accepted the plea, the criminal defendant received a dramatically reduced sentence based on it, and defendant was "wanting to 'have [his] cake and eat it too'". *Lowery v. Stovall*, 92 F.3d 219, 224–25 (4th Cir. 1996) (citing *People v.*

*Goestenkors*, 662 N.E.2d 574, 577 (Ill. App. Ct. 1996) (party who pleaded guilty to traffic violation judicially estopped from challenging officer's basis for the stop because "[t]he law will not tolerate a party in a legal proceeding swearing under oath to the untruth of some matter and then swearing under oath to the truth of that same matter")).

As reflected above in *Goestenkors*, some state courts have applied the doctrine against criminal defendants. In *Washington*, the Wisconsin court of appeals applied judicial estoppel to defendant's seeking a new trial on appeal when he refused the trial court's offer for a new trial. *State v. Washington*, 419 N.W.2d 275, 277 (Wis. Ct. App. 1987); s*ee also State v. Towery*, 920 P.2d 290, 304 (Ariz. 1996) ("We believe the doctrine of judicial estoppel is no less applicable in a criminal than in a civil trial. Any other rule would permit absurd results.").

Our court has twice assumed, without deciding, that the Government may be judicially estopped in criminal cases, as noted *supra*. *McCaskey*, 9 F.3d at 378–79; *Cluff*, 857 F.3d at 301. Pursuant to plain-error review, in both *McCaskey* and *Cluff* our court refused to judicially estop the Government. *McCaskey*, 9 F.3d at 378–79; *Cluff*, 857 F.3d at 301. In addition, in not deciding the issue in *McCaskey*, our court stated: "we believe that the underlying purposes of the doctrine are the same in both civil and criminal litigation—to protect the integrity of the judicial process and to prevent unfair and manipulative use of the court system by litigants". *McCaskey*, 9 F.3d at 379.

Whether to apply judicial estoppel to a criminal defendant is an issue meriting great consideration. That the Government does not urge its application in this appeal does not preclude our applying the doctrine because it is within our discretion to do so. Nevertheless, we need not decide whether to apply the doctrine to Farrar because, in this instance, judicial estoppel is

11

not the only doctrine which compels our not considering his obscenity challenge; as discussed *infra*, waiver does as well.

On the other hand, because application of the doctrine is of such importance, it should be considered fully. Accordingly, assuming, without deciding, that judicial estoppel can be a basis for preventing Farrar's perverting the judicial process with his inconsistent positions, we give further consideration to application of the doctrine.

It is crucial for analyzing judicial estoppel that Farrar was not just silent regarding obscenity; he acted just the opposite and, *inter alia*, agreed the images are obscene. He also affirmatively agreed there was sufficient evidence for every element of the offense (including obscenity); affirmatively stated he had no objection to the Government's presentation of a factual basis (which included obscenity); apologized for the court's having to view the images; refused a trial because "twelve unlucky members of the community . . . must view these images"; and, most importantly for judicial-estoppel purposes, misled the court regarding his *nolo contendere* plea by stating he was not "try[ing] to hide behind the law and try[ing] to come out with some appeal issue".

As discussed *supra*, we reiterate: the MJ was skeptical of Farrar's *nolo contendere* plea, because they are so uncommon; the MJ stated in "15 and a half years as a prosecutor and now six as a judge, I have never seen [a *nolo contendere* plea] either"; the Government objected to the plea, consistent with Department of Justice policy; and Farrar's counsel acknowledged the court "rarely h[as] these". Considering, on an objective basis, the plea colloquy, Farrar assuaged the MJ's reservations, and, therefore, convinced the MJ to accept the *nolo contendere* plea, by stating he was not attempting to bypass the fact-finder and challenge obscenity on appeal, as discussed *supra*.

Equally, if not more, important, as also discussed *supra*, although not required to establish a factual basis for a *nolo contendere* plea under Rule 11, the Government presented its offer of proof, describing the images in detail and presenting evidence for every element of the offense, including that the images were obscene. When, in response, the MJ asked, "[d]oes the defendant have any objection to the government's offer of proof?", Farrar's counsel and Farrar each stated "No, Your Honor".

As demonstrated from the outset of our analysis, the extremely important purposes of judicial estoppel would be more than well served by applying it here. By affirmatively agreeing the images were obscene and convincing the court he was not "try[ing] to hide behind the law and try[ing] to come out with some appeal issue", Farrar has most certainly imperiled "the integrity of the judicial process", and "perver[ted] the judicial process". *New Hampshire*, 532 U.S. at 749–50 (internal quotations omitted). He has "assert[ed] contradictory positions for tactical gain", and he is attempting to "play[] fast and loose with [this] court[]". *Trinity Marine Prods., Inc.*, 812 F.3d at 490; *see New Hampshire*, 532 U.S. at 749–50.

Farrar's litigation strategy of affirmatively agreeing in district court that the images were obscene, and convincing the MJ no appeal on the issue was forthcoming, so that he could receive the same reduced sentence as a fellow inmate, and then mounting his obscenity challenge on appeal disrupts the fundamental distinction between trial and appellate courts, threatening the "integrity of the judicial process". *New Hampshire*, 532 U.S. at 749–50. Relying on precedent requiring an "independent review", Farrar, for no other reason than "tactical gain", waited until appeal to present his obscenity challenge. *Trinity Marine Prods., Inc.*, 812 F.3d at 490.

We can only imagine the implications were Farrar's forum-shopping strategy permitted. We will not tolerate a criminal defendant who might wish

to avoid an anticipated adverse ruling by a district judge by waiting to present his constitutional challenge directly to us.  Nor will we condone a defendant who pleads *nolo contendere* to receive a reduced sentence, as Farrar did here, then uses our court to challenge his conviction.  (As discussed, Farrar pleaded *nolo contendere* "[i]n hopes of appearing before [the court] as soon as possible . . . [and] receiving the same sentence as [a fellow inmate]".)

Although Farrar is correct that we must often undertake an independent review in obscenity cases, we cannot be called upon to provide the *only* review. We are not a trial court, and cannot undertake, without the trial court's first developing a record, the factual analysis required by *Miller*'s three-part obscenity test.  *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 576 n.7 (2002) (Both the "prurient interest" and "patently offensive" prongs of the *Miller* test are "question[s] of fact to be decided by a jury applying contemporary community standards").  Nor will we do so at the behest of Farrar, whom we perceive as attempting to game the system.

b.

Our having both assumed judicial estoppel can be applied to Farrar and concluded the rationales for the doctrine support estopping him from presenting his obscenity challenge to us for the first time on appeal, we turn to whether, in our discretion, we should apply the doctrine against him.  The three "requirements" for judicial estoppel discussed in *Cluff* and *Trinity* are satisfied.  *Cluff*, 857 F.3d at 301; *Trinity Marine Prods.*, 812 F.3d at 490.  First, Farrar's position is "clearly inconsistent" with the position he took in district court.  He agreed there was sufficient evidence to prove beyond a reasonable doubt the images were obscene; listened to the factual basis and stated he had no objection to the Government's declaring the images obscene; and personally apologized for the court's having to view them.

14

No. 16-11161

Second, Farrar "convinced the court to accept that previous position". *Cluff*, 857 F.3d at 301. The MJ was hesitant to accept Farrar's *nolo contendere* plea, but he convinced the court by stating he was not "try[ing] to hide behind the law and try[ing] to come out with some appeal issue".

Also, the third requirement—that the inconsistent position not be inadvertent—is satisfied. Based on this record, Farrar did not *inadvertently* implement his duplicitous litigation strategy, as discussed *supra*.

Finally, the Court lists as a "factor", "whether the party . . . would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped". *Zedner*, 547 U.S. at 504. This factor is satisfied, because, as discussed *supra*, we are, *inter alia*, not able without a district-court record to decide the fact-based *Miller* test. For numerous and obvious reasons, our doing so would most certainly, "impose an unfair detriment on the" Government. *Id.*

We reiterate that judicial estoppel is an extremely important equitable doctrine, applied in our discretion. Again, the rationales for the doctrine more than support its application in this case. Nevertheless, in the light of, *inter alia*, Farrar's First Amendment claim, we do not decide whether the doctrine applies to him and, if it does, whether to invoke our discretionary prerogative to estop him from presenting that claim. As noted *supra*, we do not need to decide these questions because another ground unquestionably precludes his playing "fast and loose" with our court: waiver.

2.

Again, Farrar asserts: the images are not obscene; and this court must review them to determine whether they are obscene, even though, in district court, he pleaded *nolo contendere*, and affirmatively agreed they are obscene. As stated, he waived this assertion.

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant

15

circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). A *nolo contendere*, like a guilty, plea, must be knowingly, voluntarily, and intelligently made. *United States v. Ruiz*, 536 U.S. 622, 629 (2002) ("the Constitution insists . . . that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" (internal quotation omitted)); *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002); *Carter v. Collins*, 918 F.2d 1198, 1200 n.1 (5th Cir. 1990).

In *Broome*, our court noted: "an individual who enters a plea of nolo contendere waives all nonjurisdictional defects". *United States v. Broome*, 628 F.2d 403, 404 (5th Cir. 1980) (citing *Williams v. Wainwright*, 604 F.2d 404, 407 (5th Cir. 1979); *Fisher v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978)). Therefore, a criminal defendant who pleads *nolo contendere* is "then limited to claiming that the indictment failed to state an offense, that the statute is unconstitutional or that the statute of limitations bars prosecution". *Id.* at 405. Farrar's challenge is not jurisdictional; and he does not challenge his indictment, the constitutionality of 18 U.S.C. § 1466A, or the statute of limitations. Therefore, in the light of *Broome*, his obscenity challenge is waived.

Nor, as discussed *supra*, can Farrar claim the Government must establish a factual basis for his plea. As stated in *Prince* and shown in Rule 11, no factual basis is required for a plea of *nolo contendere*. *Prince*, 533 F.2d at 208; Fed. R. Crim. P. 11(a)(3).

Cases like *Clicque* do not provide Farrar relief. *Clicque*, 514 F.2d at 927–28. There, our court reversed a conviction stemming from a *guilty* plea for mailing an obscene letter because "the letter was not reproduced in the indictment", the record did not indicate "the district court judge looked at [the

letter]", and the district court did not inquire into the contents of the letter before accepting defendant's plea. *Id.* at 925. Our court held "the convicting court was under a constitutional duty to assure itself of the unprotected nature of [defendant's] writing", *id.* at 926; and reversed because "the district court did not make such an assessment before accepting the guilty plea", *id.* at 927–28.

Obviously, our opinion in *Clicque* is distinguishable on multiple grounds. First, the *Clicque* case involved a guilty plea, not *nolo contendere*. Our opinions in *Broome* and *Prince* foreclose Farrar's challenges to his *nolo contendere* plea. Second, the district court in this instance made an assessment, although none was required by Rule 11: in *Clicque*, the trial court did not even view the allegedly obscene letter; but, in this instance, the district court reviewed the obscene images. Finally, there is no indication the defendant in *Clicque* made comments similar to Farrar's. Again, he affirmatively admitted there was sufficient evidence on the obscenity issue, said he did not want a jury trial because the "twelve unlucky [jurors]" would have to view the images, affirmatively refused to object to the Government's proof the images were obscene, apologized for the MJ's viewing the images, and convinced the MJ he was not "try[ing] to come out with some appeal issue".

Again, we acknowledge the Court's requiring an independent review in obscenity cases, but, under the circumstances of this case, we will not provide the *only* review. Farrar, through his *nolo contendere* plea and statements in district court, knowingly, voluntarily, and intelligently relinquished any right he had to an independent review by this court for obscenity *vel non*.

## B.

Through the Eighth Amendment, Farrar challenges his sentence in two ways: his sentence was grossly disproportionate "as applied"; and a ten-year mandatory-minimum sentence for possession of "mere drawings" is

categorically disproportionate. The "as applied" challenge asks whether defendant's sentence is "grossly disproportionate" to the crime committed, while the categorical approach "use[s] categorical rules to define Eighth Amendment standards". *Graham v. Florida*, 560 U.S. 48, 60 (2010). (It is questionable whether Farrar preserved his categorical challenge because his objection to the presentence investigation report focuses almost exclusively on "as applied" jurisprudence. We will, however, assume he preserved that issue in district court.)

Farrar's two Eighth Amendment challenges are reviewed *de novo*. *E.g.*, *United States v. King*, 773 F.3d 48, 52 (5th Cir. 2014) (citing *United States v. Doggett*, 230 F.3d 160, 165 (5th Cir. 2000)). Each fails.

1.

In claiming his ten-year sentence is grossly disproportionate to his crime, Farrar cites the Court's opinion in *Stanley* for the proposition that "mere private possession of obscene matter cannot constitutionally be made a crime". *Stanley v. Georgia*, 394 U.S. 557, 559 (1969). Farrar contends Congress' decision on the severity of his sentence "deserves little deference", claiming Congress' creation of 18 U.S.C. § 1466A was an end-run around the Court's opinion in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). He also maintains his sentence is more severe than others for more serious offenses, asserting his sentence is greater than if he were: a producer of the images (even though he admits writing the two hand-written books), a non-recidivist who brought the images into a home with children, a creator of an "animal crush video", a seller of obscene material on Government property, a transporter of such material, or an importer of it.

Successful Eighth Amendment challenges are "exceedingly rare", because courts should defer to Congress. *E.g.*, *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). The Eighth Amendment "forbids only extreme sentences that are

'grossly disproportionate' to the crime". *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991).    Gross disproportionality concerns showing the sentence is "completely arbitrary and shocking to the sense of justice". *Rummel v. Estelle*, 587 F.2d 651, 655 (5th Cir. 1978) (internal citations omitted).

The test is two pronged:  first, this court "initially make[s] a threshold comparison of the gravity of [defendant's] offenses against the severity of [defendant's] sentence". *United States v. Hebert*, 813 F.3d 551, 565 (5th Cir. 2015).  Second, "[i]f [the court] infer[s] from this comparison that the sentence is grossly disproportionate to the offense, then we compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions".  *Id.* (internal quotations omitted).    Therefore, this court must compare Farrar's sentence to other sentences for the same offense only if he first establishes an "infer[ence] that the sentence is grossly disproportionate to the offense".  *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).  For the following reasons, he fails to do so.

We first observe that Farrar will not serve ten years solely for this offense.  As discussed *supra*, he pleaded *nolo contendere* "[i]n hopes of . . . receiving the same sentence as [a fellow inmate]".  The court not only ordered Farrar's ten-year minimum to run concurrently with the remainder of his present child-pornography sentence, but, also, ordered the ten-year sentence to run from the date of the offense, rather than the date of sentencing.  As Farrar acknowledges, this resulted in his imprisonment's being extended four-and-a-half years beyond his prior sentence.  Accordingly, the Government contends the district court "effectively sustained" Farrar's Eighth Amendment objection by ordering this "downward variance", but it cites no compelling caselaw permitting us to consider the additional time to be served in an "as applied" challenge.

No. 16-11161

Next, we note Farrar's reliance on *Stanley* and *Free Speech Coalition* are flawed. First, Farrar did not challenge the constitutionality of 18 U.S.C. § 1466A, either in the district court or on appeal. He cannot, therefore, challenge the statute's constitutionality indirectly through the Eighth Amendment.

Even if we were to allow him to challenge the statute in this way, *Stanley* and *Free Speech Coalition* would provide no relief. The Court's opinion in *Stanley* did not proscribe punishment for possession, in a federal prison, of obscenity depicting sexual exploitation of minors. Likewise, Farrar's asserting Congress made an "end run around" *Free Speech Coalition* by enacting 18 U.S.C. § 1466A lacks proper precedential backing and is irrelevant. The Court in *Free Speech Coalition* held the Child Pornography Prevention Act (CPPA) unconstitutional, because it failed to distinguish virtual child pornography from actual child pornography, a category of unprotected speech. *Free Speech Coalition*, 535 U.S. at 258. The Court did not, by contrast, prohibit punishment for possession of obscene images. *Id.* at 249 (CPPA was unconstitutional in part because it "cannot be read to prohibit obscenity").

Farrar's list of worse crimes fails to recognize Congress' obvious discretion to impose harsher sentences for repeat-offenders and crimes harming children. It goes without saying that Congress has discretion to impose harsher sentences to meet legitimate penological goals. *E.g.*, *Harmelin*, 501 U.S. at 999. Caselaw and Farrar's case show why increased penalties for recidivists and crimes against children are valid. As articulated in *Free Speech Coalition*: "The *Miller* standard . . . does not reflect the State's particular and *more compelling interest* in prosecuting those who promote the sexual exploitation of children". *Free Speech Coalition*, 535 U.S. at 240 (internal quotations omitted) (emphasis added).

20

No. 16-11161

The factual circumstances of Farrar's crime reinforce the justness of Congressional policy: he admitted "[buying the hand-drawn images] from other inmates for four or five stamps a piece". At sentencing, he admitted to having been a member of the prison's child-pornography group. He stated that group "reinforces this stuff", and that is why he "wr[ote] these stories [about molesting children] and [was] around these pictures". The prison's black market for these materials "stimulates the sexual appetites and encourages the activities of child molesters and pedophiles". S. Rep. No. 104–358, at 12–13 (1996). After Farrar was first sentenced to 180 months' imprisonment in 2007 for *producing* child pornography, because he "sexually victimized a teenage girl", he elected to continue his illicit practices in prison.

Understandably, caselaw reveals it is "exceedingly rare" to grant relief under the Eighth Amendment's gross-disproportionality standard. *E.g., Rummel*, 445 U.S. at 272 (upheld mandatory life sentence under three-strike law for obtaining $120.75 by false pretenses); *Ewing v. California*, 538 U.S. 11, 30–31 (2003) (upheld 25-year-to-life sentence for theft of golf clubs under three-strike law); *Hutto v. Davis*, 454 U.S. 370, 370–71 (1982) (upheld 40-year sentence for distributing marijuana). For the foregoing reasons, Farrar's sentence was not grossly disproportionate to his crime.

2.

Finally, Farrar seeks a categorical rule that a ten-year sentence for a recidivist's possessing obscene material depicting sexual acts of children is categorically disproportionate, and therefore unconstitutional, under the Eighth Amendment. This claim also fails.

Cases "adopting categorical rules" under the Eighth Amendment employ a two-part test. *Graham*, 560 U.S. at 61 (citing *Roper v. Simmons*, 543 U.S. 551, 572 (2005)). First, the court looks to "objective indicia of society's standards" to uncover whether there is a "national consensus against the

sentencing practice at issue". *Id.* Then the court "determine[s] in the exercise of its own independent judgment whether the punishment in question violates the Constitution". *Id.*

It would be improper to undertake a categorical analysis in this instance, because Farrar was subjected to a term-of-years sentence. The Court has undertaken categorical analysis only for death-penalty cases and those involving juvenile offenders sentenced to life-without-parole; in short, the Court has never established a categorical rule prohibiting a term-of-years sentence. Along that line, the Court has emphasized that cases involving death-penalty and juvenile offenders are "different". *Miller v. Alabama*, 567 U.S. 460, 471 (2012) ("children are constitutionally different"); *Gregg v. Georgia*, 428 U.S. 153, 188 (1976) ("penalty of death is different in kind").

For the most part, our sister circuits agree categorical analysis is improper for term-of-years sentences. The ninth circuit did not apply the approach to a ten-year minimum because "[n]either *Graham* nor *Miller* [*v. Alabama*] suggest that a ten-year mandatory prison term is the type of sentencing practice that requires categorical rules to ensure constitutional proportionality". *United States v. Shill*, 740 F.3d 1347, 1357 (9th Cir. 2014). The second circuit found error in the district court's categorical analysis of a five-year minimum sentence. *United States v. Reingold*, 731 F.3d 204, 206, 213–14 (2d Cir. 2013); *see also United States v. Cobler*, 748 F.3d 570, 580–81 (4th Cir. 2014) (no categorical analysis because the case "involves neither a sentence of death nor a sentence of life imprisonment without parole for a juvenile offender"); *United States v. Walker*, 506 F. App'x 482, 489 (6th Cir. 2012) (categorical analysis "does not apply in cases where the defendant receives a sentence that is 'less severe' than a life sentence") (quoting *United States v. Jones*, 476 F. App'x 651, 652 (6th Cir. 2012)). (The tenth circuit did conduct a categorical analysis for a 15-year mandatory-minimum sentence,

No. 16-11161

assuming without deciding such analysis was proper, but did so because the Government did not contest defendant's categorical challenge. *United States v. Orona*, 724 F.3d 1297, 1301 n.1 (10th Cir. 2013). Here, the Government contests such a challenge.)

## III.

For the foregoing reasons, the judgment is AFFIRMED.