# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 8, 2016

Lyle W. Cayce
Clerk

No. 14-31130

TRINITY MARINE PRODUCTS, INC., formerly known as Trinity Marine
Baton Rouge, Inc.,

Plaintiff–Appellant,

v.

UNITED STATES OF AMERICA,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before STEWART, Chief Judge, and BARKSDALE, and PRADO, Circuit
Judges.

EDWARD C. PRADO, Circuit Judge:

In 1999, Plaintiff–Appellant Trinity Marine Products, Inc. ("Trinity"),
was indicted for illegally storing hazardous waste without a permit. This
charge, however, was dismissed in 2003, and it was subsequently revealed
several years later that two of the federal agents involved in the investigation
and prosecution had used the case as a means to engage in an extramarital
affair with one another. It was also disclosed that one of these agents had
committed perjury and obstructed justice in attempting to conceal the affair
and the true motivation for the prosecution against Trinity. Trinity filed an

No. 14-31130

administrative claim in 2012 and a complaint in federal court in 2013 under the Federal Tort Claims Act ("FTCA") alleging malicious prosecution. Based on the recommendation of a magistrate judge, the district court dismissed Trinity's FTCA claim as time barred. Because we hold that the district court erred by failing to equitably toll the statute of limitations, we affirm in part and reverse in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 1996, agents from the Federal Bureau of Investigation ("FBI"), Environmental Protection Agency ("EPA"), United States Marshal Service, Coast Guard, and Louisiana State law enforcement executed a search warrant on a facility owned by the Canal Refining Company ("Canal"). *Vidrine v. United States*, 846 F. Supp. 2d 550, 555 (W.D. La. 2011). This facility was managed by Hubert P. Vidrine Jr. and used by Trinity to transport oil. *Id.* at 555, 574–75. The warrant was based on the belief that Canal was illegally accepting and receiving hazardous materials without the required permits. *See id.* at 573.

Among the agents involved in executing this warrant were Keith Phillips of the EPA and Ekko Barnhill of the FBI. *Id.* at 574. While they were working on the case, Agents Phillips and Barnhill began having an affair. *Id.* at 585. According to Agent Barnhill, they were only physically intimate while working together on the Canal case, as the investigation offered an opportunity for them to be together without raising the suspicions of Agent Phillips's wife. *See id.* at 624.

In 1999, a federal grand jury indicted Vidrine and Trinity for violating 42 U.S.C. § 6928(d)(2), which makes it illegal to store "hazardous waste . . . without a permit." *See Vidrine*, 846 F. Supp. 2d at 555, 561. The key to the Government's case was the testimony of Mike Franklin, a hydrocarbons broker who happened to be at the Canal refinery facility when the search warrant was

2

No. 14-31130

executed. *See id.* at 580, 582. According to Agent Barnhill's notes from a 1998 interview, Franklin "obtained samples of the product TRINITY wanted to sell. These samples were given to [a laboratory] for testing. Results of the test showed one of the sampled products to be over 1000 ppm of chlorinated solvents." *Id.* at 583 (emphasis omitted). These test results were essential to the Government's case because federal regulations provide that "[i]f the used oil contains greater than or equal to 1,000 ppm total halogens, it is presumed to be a hazardous waste." 40 C.F.R. § 279.53. Chlorinated solvents are a type of halogen. *See Vidrine v. United States*, No. 6:07-CV-1204, 2012 WL 253124, at *35 (W.D. La. Jan. 26, 2012).

No such test results were ever found to exist, however. *Vidrine*, 846 F. Supp. 2d at 594. Instead, each of the samples for which test results were available contradicted Franklin's allegations. *Id.* In light of these and other problems with Franklin's story and credibility, the court barred his testimony. *Id.* at 597. With its key witness excluded, the Government moved to voluntarily dismiss the charges. *Id.* at 580 n.62.

Vidrine filed an administrative claim under the FTCA in 2005 and a complaint in federal court asserting a malicious-prosecution claim in 2007. *Id.* at 556–57. Vidrine's complaint alleged, among other things, that Franklin was not a credible witness and that there was "no tangible, physical evidence to corroborate" Franklin's assertions. It did not contain any allegations regarding Agent Barnhill and Agent Phillips's affair. During the course of litigation in Vidrine's federal case, the district court unsealed the grand jury transcripts from the underlying criminal case. In light of this new evidence, Vidrine filed an amended complaint in 2009 that added the allegation that Agent Phillips provided false testimony to the grand jury. The amended complaint also did

3

No. 14-31130

not mention the affair or allege that it was the motivation for the investigation or prosecution.

The case proceeded to a bench trial and in September 2011 the court awarded Vidrine $1.677 million in damages for malicious prosecution. In its ruling, the court found that "Agent Phillips deliberately used his investigation and prosecution of Hubert Vidrine to foster, further, facilitate and cloak his extra-marital affair with Agent Barnhill, and perhaps, to exert improper influence over the manner in which she investigated and reported upon this case." *Id.* at 624. The court also found that Agent Phillips took further steps during discovery and the trial "to cover up the affair," including perjuring himself and obstructing justice by repeatedly calling Agent Barnhill to "remind her he had testified that their relationship during the Vidrine investigation was purely professional." *Id.* at 626.

Trinity claims that it did not learn about the extramarital affair and its concealment until 2011 when one of its employees read a blog post which mentioned a Department of Justice press release regarding Agent Phillips. The July 27, 2011 press release stated that Agent Phillips had been indicted for perjury and obstruction of justice for falsely testifying in a deposition "that he did not have an affair with the FBI Special Agent, when, in fact, he did," and "committ[ing] perjury when he testified falsely about the affair." The press release also stated that Agent Phillips obstructed justice by "contact[ing] the FBI Special Agent to influence her not to disclose the existence of the affair." Agent Phillips pleaded guilty and admitted that "[w]hile under oath, [he] testified falsely that he did not have an extramarital affair with FBI Special Agent A, testimony he knew at the time to be false" and that information about the affair "was material to the *Vidrine* civil matter at the time [he] testified falsely."

4

No. 14-31130

Trinity filed an administrative FTCA complaint on July 25, 2012—nine months after Vidrine's FTCA claim was decided and roughly a year after it claims to have learned about the affair. Trinity then filed a lawsuit for malicious prosecution in federal court on August 23, 2013, invoking the discovery rule and equitable tolling of the statute of limitations. Trinity alleged that it had no reasonable basis to bring its malicious-prosecution claim until it discovered Agent Phillips's deception in July 2011, and, therefore, its claim did not accrue until then. Trinity further alleged that due to Agent Phillips's concealment, it could not have discovered the basis for its claim "until at least March 2011, when an *internal* investigation conducted by the United States, for the first time uncovered evidence" that "an investigative and law enforcement officer *intentionally* had engaged in misconduct to conceal the improper motives for the criminal prosecution of Trinity."

Reasoning that the FTCA's two-year statute of limitations was jurisdictional, a magistrate judge issued a recommendation that the complaint be dismissed for lack of subject-matter jurisdiction. The district judge adopted the magistrate judge's recommendation and entered judgment for the Government. Trinity timely appealed. While briefing was pending in the present appeal, the Supreme Court decided *United States v. Kwai Fun Wong* and held that "the FTCA's time bars are nonjurisdictional and subject to equitable tolling." 135 S. Ct. 1625, 1638 (2015).

## II.  JURISDICTION AND STANDARD OF REVIEW

The district court had "the jurisdiction to determine its own jurisdiction." *Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1137 (5th Cir. 1980). To the extent the district court addressed the merits, it had original jurisdiction under 28 U.S.C. § 1346(b)(1). This Court has appellate jurisdiction

5

to review the district court's final decision dismissing the complaint under 28 U.S.C. § 1291.

The district court dismissed Trinity's FTCA claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), concluding that the FTCA's statute of limitations was jurisdictional and had run. In the alternative, the district court concluded that even assuming the FTCA's statute of limitations was not jurisdictional, equitable tolling would not apply in these circumstances.

Because the district court held that the FTCA's statute of limitations was jurisdictional, it concluded that Trinity, as the claimant, bore the burden of showing that the limitations period had not run. However, after the district court made its ruling, the Supreme Court held in *Wong* that this is not the case. *See* 135 S. Ct. at 1638 ("[W]e hold that the FTCA's time bars are nonjurisdictional . . . ."). Accordingly, the district court should have considered the Government's motion to dismiss under Rule 12(b)(6) rather than 12(b)(1), *see* Fed. R. Civ. P. 12(b), and held that the FTCA's statute of limitations is an affirmative defense for which the Government has the burden of proof, *see Sec. Indus. Ins. Co. v. United States*, 702 F.2d 1234, 1251 (5th Cir. 1983). That the district court considered this matter under Rule 12(b)(1), however, does not require reversal where "a remand would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010). Nor must we reverse because the district court erred in determining which party bore the burden of proof. Rather, "this court may 'affirm the district court's judgment on any grounds supported by the record.'" *United States ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 338 n.8 (5th Cir. 2008) (quoting *Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.*, 509 F.3d 216, 221 (5th Cir. 2007)).

No. 14-31130

The district court also made summary judgment rulings. For instance, it held that even if the FTCA's statute of limitations was not jurisdictional and equitable tolling could apply, Trinity would not be entitled to equitable tolling. This holding was unrelated to the district court's examination of its jurisdiction and necessarily relied on evidence outside the pleadings. Specifically, the district court held that "there is no evidence that Trinity Marine did anything between the date that the indictment was dismissed and the date this suit was filed that might be perceived as diligent pursuit of its legal remedies" and found Trinity's conduct particularly troubling "when its inaction is compared with the actions taken by Mr. Vidrine."

"Although the district court did not explicitly inform the parties that it was converting the motion to dismiss into a summary judgment motion, 'appellate courts may take the district court's consideration of matters outside the pleadings to trigger an implicit conversion.'" *Bellotte v. Edwards*, 388 F. App'x 334, 337 (4th Cir. 2010) (per curiam) (quoting *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007)); *see also, e.g. Exxon Corp. v. Md. Cas. Co.*, 599 F.2d 659, 661 (5th Cir. 1979). Under Rule 12(d), a district court may convert a motion to dismiss to a motion for summary judgment so long as it gives the parties a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, the parties had ample notice that the district court might consider the extra-pleading material included with the Government's motion to dismiss. Moreover, Trinity filed its own motion for summary judgment that relied on evidence outside the pleadings. Thus, we consider the district court to have implicitly converted the Government's motion to dismiss into a motion for summary judgment. Summary judgment is appropriate where, after "[t]he evidence of the non-movant is . . . believed, and all justifiable inferences are to

7

be drawn in his favor," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a).

## III.  DISCUSSION

The district court held that Trinity's malicious-prosecution claim accrued on dismissal of the indictment and that because the FTCA's statute of limitations was jurisdictional it could not be equitably tolled. The district court also held that even if it could be tolled, Trinity had not met its burden of establishing that equitable tolling would be appropriate. Finally, the district court rejected Trinity's arguments that the statute of limitations should be tolled under the doctrines of judicial and collateral estoppel. Trinity appeals these rulings.

## A.    Accrual

Under the FTCA, tort actions are barred "against the federal government unless the claim is first presented to the appropriate federal agency 'within two years after such claim accrues.'" *Johnson v. United States*, 460 F.3d 616, 621 (5th Cir. 2006) (quoting *United States v. Kubrick*, 444 U.S. 111, 113 (1979)). "The general rule under the FTCA is that a tort action accrues at the time of a plaintiff's injury." *Id.* In *Dubose v. Kansas City Southern Railway Co.*, we explained that the discovery rule governs the accrual of causes of action in federal cases where a plaintiff claims it was not aware of the injury or could not have discovered facts critical to ascertaining the injury's cause. *See* 729 F.2d 1026, 1030 (5th Cir. 1984). Under the discovery rule, "a claim accrues when a plaintiff knows both her injury and its cause." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 190 (5th Cir. 2011), *abrogated on other grounds by Wong*, 135 S. Ct. 1625. In cases of alleged malicious prosecution, numerous federal courts, including this one, have uniformly

concluded that a claim accrues with the termination of the criminal proceeding against the plaintiff. *See, e.g.*, *Brummett v. Camble*, 946 F.2d 1178, 1184 (5th Cir. 1991).

There is no dispute that Trinity was aware of its injury no later than 2003 when the criminal indictment was dismissed. The issue, then, is whether Trinity was aware of the causal connection between its injury and the defendant's actions at this time. The causal-connection element is met if the plaintiff "had knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the injury and [the defendant's actions] or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection." *Adrian v. Selbe*, 364 F. App'x 934, 938 (5th Cir. 2010) (per curiam) (alteration omitted) (quoting *Piotrowski v. City of Hous.*, 51 F.3d 512, 516 (5th Cir. 1995)).

In *Ortega v. United States*, 547 F. App'x 384 (5th Cir. 2013) (per curiam), this Court rejected a claim similar to the one Trinity makes here. The plaintiffs in *Ortega* argued that their FTCA claims, which alleged that they had been illegally removed, "could not have accrued until May 15, 2009, at the earliest because that is when they learned . . . that Mr. Ortega's removal was conducted without a valid removal order." *Id.* at 387. Holding that their claims were nevertheless untimely, we reasoned that the plaintiffs' contention "that they did not discover that there was any injury *at all* until they learned that there had been no removal order against Mr. Ortega" was really an "attempt to define their 'injury' by the *unlawfulness* of Mr. Ortega's deportation, rather than by the deportation *per se*. However, to define a tortious injury by the unlawfulness of the tortious act causing the injury is circular." *Id.* That the absence of a removal order no doubt strengthened the plaintiffs' claim was irrelevant to accrual of the statute of limitations. Rather, we explained that:

> The Ortegas knew that they had suffered injuries immediately after Mr. Ortega's arrest and deportation on May 28, 2008, and they knew that those injuries were caused by federal agents. These constitute the sort of facts that we consider 'the critical facts of [a plaintiff's] injury and its cause,' which establish accrual.

*Id.* (alteration in original) (quoting *Dubose*, 729 F.2d at 1030).

This same principle applies with equal force here. Trinity knew that the charges against it were dismissed in 2003 and that any related injury had been caused by agents of the federal government. While information about Agent Phillips and Agent Barnhill's affair certainly strengthens Trinity's claim, it does not alter when the claim accrued. Accordingly, the district court correctly concluded that Trinity's claim accrued before 2009.

## B.    Equitable Tolling

The fact that Trinity's malicious-prosecution claim accrued as early as 2003, however, is not fatal to its case. In *Wong*, the Supreme Court held that equitable tolling may be applied to claims under the FTCA. 135 S. Ct. at 1638. "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002) (quoting *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000)). As "[t]he claimant," Trinity "bears the burden of justifying equitable tolling." *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999). This Court has recognized several grounds for equitable tolling, including where a plaintiff is unaware "of the facts giving rise to the claim because of the defendant's intentional concealment of them." *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011).

The principal issue before this Court is whether Agent Phillips's intentional concealment of his extramarital affair with another investigator should equitably toll the statute of limitations. This Court has previously

10

considered several cases in which a plaintiff asserts that it was prevented from bringing a timely claim due to the defendant's intentional concealment of material facts. In such cases, this Court has held that the limitations period may be tolled "by proving two elements: first, that the defendants concealed the conduct complained of, and second, that the plaintiff failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim." *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1528 (5th Cir. 1988) (alteration omitted) (quoting *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1169 (5th Cir. 1979)).

The first of these factors is plainly met in this case. Agent Phillips lied under oath and was ultimately charged with, and imprisoned for, perjury and obstruction of justice for his attempts to conceal the affair and material facts relevant to the Trinity prosecution. Trinity argues that the second factor is also met in this case because no amount of diligence would have revealed Agent Phillips's deceptions prior to the release of the government's internal investigation in 2011. The Government objects and contends that equitable tolling should not apply because Trinity failed to take action for eight years following the dismissal of the indictment, during which time its co-defendant, Vidrine, filed suit and succeeded on its malicious-prosecution claim.

While the Government is correct to point out that equitable tolling "is not intended for those who sleep on their rights," *Covey v. Ark. River Co.*, 865 F.2d 660, 662 (5th Cir. 1989), this Court held in *Beef Industries* that "[t]he mere filing of a similar lawsuit, without more, does not necessarily give 'good ground' [to support the plaintiff's lawsuit] because that suit might well be frivolous or baseless," *Beef Indus.*, 600 F.2d at 1171. Rather, as we explained in *Allan Construction*: "To justify summary judgment, . . . defendants would have had to prove that the plaintiffs had access to information that would independently

11

verify the allegations in the [similar lawsuit's] complaint." 851 F.2d at 1533. Put another way, a defendant can establish that summary judgment is warranted only if it "demonstrate[s] conclusively:" (1) "that the plaintiffs, through the exercise of reasonable diligence, would have discovered adequate ground for filing suit," *id.* (quoting *Beef Indus.*, 600 F.2d at 1171), and (2) either that there is no evidence of reasonable diligence, or, if the plaintiff produces "some evidence of its diligence," that "no reasonable jury could consider [the plaintiff's] attempts reasonably diligent," *id.* at 1534.

A claim for malicious prosecution under the FTCA is dependent on the substantive law of the state where the claim arose, *Cleveland ex rel. Cleveland v. United States*, 457 F.3d 397, 403 (5th Cir. 2006), in this case, Louisiana. Under Louisiana law, a claim of malicious prosecution requires showing both an "absence of probable cause" and "the presence of malice." *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 452 (La. 1987). Further, 28 U.S.C. § 2680(h)'s "law enforcement proviso" precludes FTCA malicious-prosecution claims unless the claim is premised on the "acts or omissions of [federal] investigative or law enforcement officers." Thus, the only evidentiary basis for a viable malicious-prosecution FTCA claim "well grounded in fact" within the meaning of *Allan Construction*, would be evidence to support Vidrine's allegations that federal law enforcement officers maliciously instigated the prosecution despite a lack of probable cause.

The Government argues that Trinity would have discovered evidence to independently verify Vidrine's allegations had it exercised reasonable diligence when Agent Phillips's grand jury testimony in the underlying criminal case was unsealed in 2007 and then referenced in Vidrine's amended complaint in 2009. However, neither the unsealed grand jury testimony nor Vidrine's amended complaint *conclusively establish* that Trinity would have discovered

No. 14-31130

evidence to verify Vidrine's allegations that federal law enforcement officials maliciously instigated the case against Vidrine and Trinity despite a lack of probable cause. For instance, the judge who presided over the underlying criminal case, after reviewing the grand jury testimony, concluded that it did not, on its face, contain evidence of impropriety. Even Vidrine's 2009 amended complaint, which referred to the grand jury testimony, stated that the allegation was not based on concrete evidence but rather "upon information and belief" and states: "*If subsequent discovery proves this to be true*, then the conduct of such . . . employees of the Government . . . would constitute [a] . . . conspiracy to maliciously prosecute Mr. Vidrine." Although the grand jury testimony was *later* found to be "replete with misrepresentations, falsehoods, omissions, hyperbole, and inflammatory statements," *Vidrine*, 846 F. Supp. 2d at 639, information about the affair as the motive to perpetuate an investigation lacking probable cause was only discovered as a result of the Government's internal investigation, which did not become available until July 2011—less than two years before Trinity filed its administrative claim. Further, trial testimony in the *Vidrine* civil case provided evidence that Agent Phillips continued to conceal the affair well into 2011. Thus, the Government has not met its burden of conclusively establishing that Trinity would have discovered evidence to support the allegations in Vidrine's complaint through the exercise of reasonable diligence prior to 2011. Accordingly, the district court's holding in this regard must be reversed.

## C.   **Judicial and Collateral Estoppel**

Trinity argues that the district court erred in finding that the statute of limitations should not be tolled under the equitable doctrines of judicial and collateral estoppel. The doctrine of judicial estoppel prevents "litigants from asserting contradictory positions for tactical gain." *Republic of Ecuador v.*

13

*Connor*, 708 F.3d 651, 654 (5th Cir. 2013). Judicial estoppel applies only if "the following elements are present: (1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011).

Trinity argues that the Government should be judicially estopped from asserting that Trinity had a factual basis for its malicious-prosecution claim because the Government vigorously defended itself on the merits in the *Vidrine* litigation. However, asserting that one plaintiff's case is weak in one proceeding is not inconsistent with arguing that a second plaintiff's case is untimely. Further, the court did not accept the Government's prior position in *Vidrine*. Instead, the court in *Vidrine* awarded the plaintiff a nearly $1.7 million judgment. Accordingly, judicial estoppel does not apply because the Government has not taken an inconsistent position that has been adopted by a court.

Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza*, 464 U.S. 154, 158 (1984). A plaintiff seeking to invoke this doctrine "offensively" must establish four elements:

> (i) The issue under consideration in a subsequent action must be identical to the issue litigated in a prior action; (ii) The issue must have been fully and vigorously litigated in the prior action; (iii) The issue must have been necessary to support the judgment in the prior case; and (iv) There must be no special circumstance that would render [estoppel] inappropriate or unfair.

*Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013) (alteration in original) (quoting *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994)).

Here, Trinity fails to establish the first element because the issue in this case is not "identical to the issue litigated in [the] prior action." *Id.* In essence, Trinity argues that the Government should be estopped from arguing that Trinity had a factual basis to investigate a potential malicious-prosecution claim because the court in *Vidrine* found that Agent Phillips went to great lengths to cover up the affair while the *Vidrine* case was ongoing and that Agent Phillips's extramarital affair "was, at least in part (if not in whole), a motivation for Agent Phillips'[s] continued pursuit of Hubert Vidrine [and Trinity], without probable cause." *Vidrine,* 846 F. Supp. 2d at 624–25. But this argument overlooks the fact that the Government is not contesting Agent Phillips's fraudulent concealment; instead, they are contesting Trinity's lack of diligence in pursuing its claim. The diligence issue, which pertains to timeliness under the equitable-tolling doctrine, was never at issue in the *Vidrine* litigation. Thus, the equitable-tolling diligence issue is not identical to the issue in the *Vidrine* litigation and collateral estoppel does not apply.

## IV.  CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED in part and REVERSED in part, and this matter is remanded for further proceedings consistent with this opinion.