# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2020

Lyle W. Cayce
Clerk

No. 20-10329

JOHN ROE,

*Plaintiff—Appellant*,

*versus*

UNITED STATES OF AMERICA,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-792

Before HIGGINBOTHAM, SMITH, and DENNIS, *Circuit Judges*.
PER CURIAM:*

Plaintiff, proceeding *pro se*[1] under the pseudonym "John Roe," appeals the dismissal of his Federal Tort Claims Act ("FTCA") suit against the United States Government. The district court ruled that most of Roe's claims were time-barred under the FTCA's two-year statute of limitations,

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

[1] Although *pro se*, Plaintiff's complaint mentions that he attended law school.

*see* 28 U.S.C. § 2401(b), and that the remainder of his claims failed as a matter of law, *see* FED. R. CIV. P. 12(b)(6). Roe also appeals the district court's denial of his request to amend his complaint a fourth time.

Having carefully reviewed Roe's complaint and the applicable law, we AFFIRM in part, REVERSE in part, and REMAND.

## I.

At this early stage of litigation, "[w]e take all factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017). Therefore, for purposes of this opinion, we present all factual allegations in Roe's third amended complaint as true and construe them in the light most favorable to Roe.

According to Roe's third amended complaint, in November 2015, Roe, a citizen of Haiti, was taken into federal immigration custody and detained in the Johnson County Corrections Center ("JCCC") in Cleburne, Texas, where immigration detainees are held pursuant to a contract between the federal government and Johnson County. Roe, who had suffered seizures in the past, had a seizure while at the jail and was taken to a local hospital. On November 22, while hospitalized, Roe was sexually assaulted by a guard employed by a Johnson County subcontractor assigned to guard him.

Upon return to JCCC on November 24, Roe reported the assault to jail officials and also called his wife and told her to report the assault to the Department of Homeland Security's ("DHS's") sexual assault hotline. Roe's wife filed a complaint with DHS on or about December 1, 2015. Two DHS agents interviewed Roe about his sexual assault report on December 2, 2015. Johnson County conducted its own investigation, including a polygraph test, that ended in Roe's arrest on December 2 on state charges of making a false report to a police officer. Roe was subjected to degrading

treatment and disciplinary sanctions by Johnson County officials in the aftermath of his sexual assault and arrest.

Roe was booked into the criminal section of the JCCC upon his arrest. He was moved back to the civil immigration detainee section on December 12, 2015, after his wife posted bail, and was transferred that same day to the South Texas ICE Processing Center in Pearsall, Texas. On January 20, 2016, Roe was released from ICE custody. His first appearance in state court on the false report charge was on February 22, 2016, and a pre-trial hearing was held March 30, 2016. Roe had another seizure on April 16, 2016, was hospitalized for seven days, and was diagnosed with multiple serious health conditions.

On August 25, 2017, Roe failed to appear in Texas state court for his trial on the false police report charge and a warrant was issued. Roe was arrested pursuant to the warrant on December 19, 2017, by Johnson County sheriff's deputies and "two unknown agents" from DHS, a male and a female agent. During the arrest, Roe's home was searched and the "DHS female agent" put her knee on Roe's back to handcuff him while he was on the floor. An immigration detainer was also lodged against Roe.

On January 11, 2018, Roe met with his attorney and "learned for the first time that the brief interview he had with the DHS agents on December 2, 2015, was deemed a criminal *investigation*" that "determined that [Roe] submitted false statements" and "[d]iscovery further revealed that [Roe's arrest] was the result of a joint investigation" by the DHS agents and Johnson County "wherein official reports and investigative findings were shared and compared in order to establish probable cause for [Roe's] arrest." Further, Roe states that "[a]ccording to trial testimony" the two DHS agents met with Johnson County officials immediately following their interview with Roe and "gave their imprimatur to, and designated [Roe] for, arrest."

No. 20-10329

During preparations for the criminal proceedings, Roe's attorney was unable to locate an arrest warrant for his December 2015 arrest. During a pre-trial hearing, a Johnson County official admitted on cross-examination that he did not obtain an arrest warrant from a neutral and detached magistrate before arresting Roe on the false report charge. That same official also "admitted under oath" that the decision to arrest Roe "was jointly made with DHS agents." On April 3, 2018, the trial court determined there was no probable cause for the December 2015 arrest. Unable to afford bond, Roe spent nearly six months in pretrial detention awaiting trial. During the trial, in May 2018, Roe learned that Johnson County and DHS agents "colluded" to have him arrested, either to pressure him into recanting his sexual assault allegations or to have him convicted and removed from the country. As part of this conspiracy, DHS agents withheld an audio recording they had made of Roe's interview and falsified notes in their reports.

On May 8, 2018, Roe was found not guilty on the false report charge. He was held on the immigration detainer by Johnson County until May 10, when he was transferred to DHS custody and released the next day. Throughout all of these events, Roe and his wife repeatedly contacted DHS to inquire about the investigation into his sexual assault. DHS repeatedly responded that it was still investigating, including as late as October 2017. DHS sent Roe a letter dated September 28, 2018, noting "concerns" with Johnson County's investigation and prosecution of Roe for making a false report.

## II.

Roe filed an administrative claim with DHS on June 18, 2018, a prerequisite to filing a lawsuit under the FTCA. *See* 28 U.S.C. § 2401(b). After more than six months passed with no disposition by DHS, Roe filed suit against the Government on April 1, 2019. Roe alleged 18 different claims

against the Government. To summarize: Counts 1 through 5 sound in negligence and relate to DHS's failure to prevent Roe's sexual assault. Count 6 alleges false arrest and false imprisonment resulting from Roe's December 2015 arrest and December 2017 re-arrest; Roe alleges he was imprisoned for six months total. Counts 7 through 10 allege various intentional torts related to Roe's December 2017 re-arrest after a warrant was issued when he failed to appear. Count 11 alleges malicious prosecution and count 12 alleges abuse of process, both related to Roe's criminal proceedings on the false report charge. Count 13 alleges "negligent and gross negligent investigation" by the DHS agents who investigated Roe's sexual assault. Count 14 alleges "ratification" by DHS agents, presumably referring to DHS's alleged acquiescing in Johnson County's arrest and prosecution. Count 15 alleges "civil conspiracy" between the DHS agents and Johnson County. Count 16 alleges invasion of privacy because information about Roe's criminal prosecution was published in the public records of the Johnson County Clerk of Court. Count 17 alleges false arrest and imprisonment for the three days that Roe was held before release after his acquittal due to an immigration detainer. Count 18 alleges intentional infliction of emotional distress.

On June 20, 2019, the Government filed a motion to dismiss Roe's second amended complaint, arguing that Roe did not sufficiently plead facts to state any claim, and that, in the alternative, any claims were time-barred because he waited more than two years to file an administrative claim as required by the FTCA. On July 12, 2019, Roe made an unopposed motion to amend his complaint. Roe's third amended complaint was filed on July 22, 2019. On August 5, 2019, the Government filed another motion to dismiss, urging essentially the same grounds. Roe opposed the motion, and in his response requested the district court grant him leave to amend again to

remedy any defects in his pleadings.  He did not submit any proposed amendments with this request.

On February 28, 2020, the magistrate judge to whom the motion was referred recommended that all of Roe's claims be dismissed either because they were time-barred (counts 1-6, 11, 13-16, and 18) or because they failed to state a claim (counts 7-10, 12, and 17).  In doing so, the magistrate judge recommended denying Roe's request for equitable tolling.  Additionally, the magistrate judge recommended Roe's request for leave to amend be denied because he did not file a motion for leave, did not attach a copy of the amended pleadings as required by local rules, and because he had "already pled his best case" after having the previous opportunity to amend.  On March 24, 2020, over Roe's objections, the district court adopted the findings, conclusions, and recommendations of the magistrate judge granting the Government's motion to dismiss.  Roe appealed.

### III.

We generally review *de novo* a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Willoughby v. United States ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)).  We review a district court's determination that equitable tolling does not apply for abuse of discretion.  *Fisher v. Johnson*, 174 F.3d 710,

713 (5th Cir. 1999).  Additionally, "this Court may affirm the district court's judgment on any grounds supported by the record." *Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 221 (5th Cir. 2007).

We review the denial of a request for leave to amend for abuse of discretion.  *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 347 (5th Cir. 2008).  "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (quoting *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016)).

**IV.**

The FTCA waives the United States' sovereign immunity from tort suits, subject to certain requirements.  "The FTCA applies state law to determine the government's liability for torts within the FTCA waiver of immunity." *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999) (citing 28 U.S.C. §§ 1346(b), 2674).  Therefore, Roe's claims are governed by the substantive law of Texas, the state where the allegedly tortious acts and omissions occurred.  *See* § 1346(b).  While the FTCA incorporates state tort causes of action, it has its own two-year statute of limitations and administrative exhaustion requirement: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b).

When an FTCA claim accrues is a question of federal law.  "Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993) (per curiam).  However, under the "discovery rule," "a claim accrues when a plaintiff knows both her injury and its cause."

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,* 646 F.3d 185, 190 (5th Cir. 2011), *abrogated on other grounds by United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). "The causal-connection element is met if the plaintiff had knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the injury and [the defendant's actions] or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection." *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 488 (5th Cir. 2016) (alteration in original). Regarding the relevant facts of injury and causation, "a plaintiff need not have actual knowledge if the circumstances would lead a reasonable person to investigate further." *Piotrowski v. City of Hous.*, 51 F.3d 512, 516 (5th Cir. 1995). A claim accrues when the plaintiff either has actual knowledge of the relevant facts or "notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Vigman v. Cmty. Nat'l Bank & Tr. Co.*, 635 F.2d 455, 459 (5th Cir. Jan. 1981).

In rare circumstances, the FTCA's two-year statute of limitations is subject to equitable tolling. *Trinity Marine Prods.*, 812 F.3d at 488–89. Equitable tolling is to be applied sparingly. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The plaintiff has the burden to provide justification for equitable tolling. *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir. 1995) (per curiam). In past cases, we have described at least three bases for equitable tolling, two of which are relevant here: (1) "plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them;" and (2) "the [defendant's] misleading the plaintiff about the nature of her rights." *Id.* (citing *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295, 1302–03 (5th Cir. 1979)). These have been described as "possible bases," leaving the door open for recognition of other cognizable bases for equitable tolling. *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011).

Equitable tolling does not excuse a plaintiff's lack of due diligence in pursuing his or her rights.  Rather, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Rashidi v. Am. President Lines,* 96 F.3d 124, 128 (5th Cir. 1996).  When a plaintiff seeks equitable tolling due to the defendant's intentional concealment of material facts, he or she must show both (1) concealment by the defendant, and (2) that the plaintiff failed, despite the exercise of due diligence, to discover the relevant facts that form the basis of his claim. *Trinity Marine Prods.*, 812 F.3d at 489.

*Claims related to Roe's sexual assault (counts 1-5, 13)*

Roe alleges that DHS was negligent in allowing the assault to happen and failing to protect him, negligent in supervising provision of medical care by JCCC (both related to his seizures and the assault), negligent in failing to follow its own internal policies, and that DHS agents were negligent in investigating the assault.  The general accrual rule applies to causes of action arising from Roe's sexual assault and alleged negligent acts or omissions by DHS preceding or in the immediate aftermath of the assault, meaning the causes of action listed in counts 1-5 and 13 of the third amended complaint accrued at the time of his injuries in November and December 2015.  We agree with the district court that all of these claims are time-barred because the allegedly negligent acts and omissions occurred more than two years before Roe filed his administrative claim: Roe was assaulted on November 22, 2015, and alleged negligence by DHS occurred in December 2015, but Roe did not file an administrative claim until June 18, 2018—more than two and a half years later.

Roe does not appear to dispute this timeline.  Rather, he argues the claims should be subject to equitable tolling, either because of fraudulent

concealment on the part of the Government, or because he was incapacitated due to his medical conditions.

Upon careful review of Roe's third amended complaint, we conclude that the district court did not abuse its discretion in denying Roe equitable tolling as to these claims. Roe did not plead any facts that suggested fraudulent concealment of material facts by the Government related to the existence of his causes of action contained in counts 1-5 and 13. Rather, Roe was aware that he had a potential cause of action for negligence at the time of the sexual assault. Nor did Roe plead facts that the Government had misled him about his potential cause of action. In response to his inquiries, DHS merely told him that its investigation was ongoing. These responses did not prevent Roe from asserting his rights or create any obstacle to filing suit. *See Farmer v. D & O Contractors, Inc.*, 640 F. App'x 302, 306–07 (5th Cir. 2016) (holding that equitable tolling was not warranted when the FBI advised the plaintiff not to file a civil RICO suit while there was an ongoing criminal investigation because such advice did not create any external obstacle to plaintiff's filing suit).

As to incapacity, Roe stated in his third amended complaint that he had a seizure in April 2016 and was hospitalized for seven days. In response to the Government's second motion to dismiss, he argued for the first time that he could not pursue his claims against the Government in a timely manner because of his "then-mental incapacity" and stated that his "medical condition" (including traumatic brain injury, aphasia, encephalopathy, seizure disorder, and conversion disorder) did not improve "until late November or early December of 2017"—coinciding with the approximate time that the majority of his claims became time-barred. When ruling on a motion to dismiss, we only consider facts alleged in the complaint, proper attachments, documents incorporated by reference, and matters of which we may take judicial notice. *See Randall D. Wolcott, M.D., P.A. v. Sebelius,* 635

F.3d 757, 763 (5th Cir. 2011). Our Court has yet to directly decide if illness or mental incapacity justifies equitable tolling. *See Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 233 (5th Cir. 1999) (assuming without deciding that even if equitable tolling based on mental incapacity was permitted that such a rule was inapplicable to the facts of the case); *see also Vidal v. Chertoff*, 293 F. App'x 325, 329 (5th Cir. 2008). Likewise, we assume without deciding that even if equitable tolling is permitted based on incapacity, the district court did not abuse its discretion by denying Roe equitable tolling in this case.

Therefore, we affirm the district court's dismissal of the claims listed in counts 1-5 and 13.

*Claims related to Roe's 2015 arrest and imprisonment (count 6)*

"Under Texas law, the elements of false imprisonment are (1) willful detention, (2) without consent, and (3) without authority of law." *Davila v. United States*, 713 F.3d 248, 262 (5th Cir. 2013) (cleaned up). "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "The sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process* . . . . Thus, to determine the beginning of the limitations period in this case, we must determine when petitioner's false imprisonment came to an end." *Id.* at 389.

According to his third amended complaint, Roe was arrested on December 2, 2015, and released on bail from criminal custody 10 days later on December 12, 2015 (specifically, he was transferred from criminal custody back into civil immigration custody). The district court determined that his claim accrued at that point because his false imprisonment ended once he was

released on bond.[2] *See Reed v. Edwards*, 487 F. App'x 904, 906 (5th Cir. 2012) ("Our caselaw indirectly addresses this issue and suggests that a bond hearing constitutes legal process under *Wallace*."). Roe counters that any bond hearing was not sufficient legal process and that his claims did not accrue until April 3, 2018, when a probable cause hearing was conducted. He also argues that he was subject to continued detention through his acquittal on May 8, 2018, because his bail conditions constituted an ongoing seizure. However, Roe's complaint does not allege facts regarding his bail conditions. From the face of the complaint it appears that Roe's "detention" ended, and his claim therefore accrued, when he was released from criminal custody on December 12, 2015.

Alternatively, Roe argues that under the "discovery rule" his claims did not accrue until January 11, 2018, the date he first learned that a conspiracy existed by which DHS agents were directly involved in his arrest and prosecution by Johnson County. Accepting all well-pleaded facts as true, as we must at this stage of the litigation, Roe has not shown that accrual of these claim should be delayed by the discovery rule. Even if Roe did not have actual knowledge that DHS agents were one of the causes of his arrest and imprisonment until January 2018, he has failed to show that he could not have obtained that knowledge through the exercise of due diligence given that he had notice of facts at the time of his arrest and imprisonment in 2015 that DHS agents were potentially a cause of his injury. Specifically, he knew they were investigating the assault and had interviewed him immediately prior to his arrest. Indeed, it is highly doubtful that Roe could ever show that the relevant facts were undiscoverable, because his lawyer during his state criminal proceedings actually discovered that DHS was involved in the 2015

---

[2] Because Roe was released on bond, presumably a hearing was held. However, the complaint does not allege any hearing, nor a specific date.

arrest. Therefore, based on these allegations, Roe's claims for false arrest and false imprisonment arising from his 2015 arrest are time-barred, and we affirm the district court's dismissal of those claims.

*Claims related to Roe's 2017 arrest and imprisonment (counts 7-10)*

The district court determined that Roe's claims based on his 2017 arrest and pre-trial imprisonment, though not time-barred, failed as a matter of law because his arrest was pursuant to a valid capias warrant issued after he failed to appear. We agree with the district court that arrest and imprisonment pursuant to a valid warrant for failure to appear is not false arrest and imprisonment because it is done with legal authority. Roe's complaint itself states that he failed to appear and that a warrant was issued for his arrest as a result. Because counts 7-9 fail to state a claim for which relief can be granted, we affirm the district court's dismissal of those counts.

Relatedly, in count 10 Roe alleges that an assault and battery occurred at the hands of DHS agents during his 2017 arrest, but he pleads no facts that plausibly suggest either an assault or a battery. Under Texas law, the use of reasonable force by law enforcement officers in effectuating an arrest is privileged. *See Davila*, 713 F.3d at 261–62. No well-pleaded facts suggest unreasonable force. Rather, Roe alleges only physical contact that is to be expected during a lawful arrest. Therefore, count 10 fails to state a claim, and we affirm the district court's dismissal.

*Malicious prosecution (count 11)*

The district court determined that Roe's claims for malicious prosecution and abuse of process were time-barred. We disagree. The district court applied the wrong accrual rule to these claims when calculating the statute of limitations.

The elements of a claim for malicious prosecution under Texas state law are: "(1) commencement of a criminal prosecution against the plaintiff;

(2) causation (initiation or procurement) of the action by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff." *Brown*, 188 F.3d at 586 (citing *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997)). "In cases of alleged malicious prosecution, numerous federal courts, including this one, have uniformly concluded that a claim accrues with the termination of the criminal proceeding against the plaintiff." *Trinity Marine Prods., Inc.*, 812 F.3d at 488. Roe's complaint alleges that criminal proceedings against him terminated on May 8, 2018, when he was acquitted. Only at that point did his claim accrue. The district court applied the law incorrectly when it determined that Roe's malicious prosecution claim accrued at the time of his arrest in December 2015. Roe's malicious prosecution claim is timely because it accrued on May 8, 2018, and he filed his administrative claim on June 18, 2018. Therefore, we reverse the district court's dismissal of that claim.

*Abuse of process (count 12)*

Roe next alleged abuse of process in count 12 of his complaint. Under Texas law, "[a]buse of process is the malicious misuse or misapplication of process in order to accomplish an ulterior purpose." *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 378 (Tex. App.—Texarkana 1989, no writ). "When the process is used for the purpose for which it is intended, even though accompanied by an ulterior motive, no abuse of process occurs." *Id.* at 378–79. "If wrongful intent or malice caused the process to be issued initially, the claim is instead one for malicious prosecution." *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Reading Roe's complaint closely, though he alleges his criminal prosecution was accompanied by an ulterior motive on the part of state and federal authorities, nowhere does he allege facts that suggested the process

No. 20-10329

itself was improperly used after it was initiated.  Therefore, while Roe's claim is not time-barred, we affirm the district court's dismissal on the alternative grounds that his complaint failed to state a claim for abuse of process.

*Intentional infliction of emotional distress (count 18)*

The district court dismissed Roe's intentional infliction of emotional distress (IIED) claim on the grounds that it was time-barred.  We affirm the district court's dismissal, not on the grounds that the IIED claim was time-barred, but because Roe's complaint fails to state a claim for relief.  The Texas Supreme Court has explained that the tort of IIED was intended to be "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress."  *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).  "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available."  *Id.*  Because the gravamen of Roe's complaint is contained in his other 17 counts, his claim for IIED fails as a matter of law and should be dismissed.

*Civil conspiracy (count 15)*

Civil conspiracy is not a stand-alone tort.  Rather, it is a derivative tort that requires the plaintiff to prove defendants' participation in an underlying tort. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).  To the extent that Roe has alleged DHS agents participated in his malicious prosecution (count

11), he has stated a claim for conspiracy.  Therefore, we reverse the district court's dismissal of this claim.

*Forfeited issues (counts 14, 16-17)*

Roe's appellate brief does not include argument pertaining to the district court's dismissal of his ratification claim (count 14), "invasion of privacy by publication of private facts" claim (count 16), or false imprisonment post-acquittal claim (count 17), and therefore he forfeits those issues on appeal.  *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995) (citing FED. R. APP. P. 28(a)).

*Denial of leave to amend*

Finally, Roe argues on appeal that the district court abused its discretion by denying his request for leave to amend his complaint a fourth time.[3]  Rule 15 limits a district court's discretion by providing that "[t]he court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  Although Rule 15 "evinces a bias in favor of granting leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (Former 5th Cir. Nov. 1981), a movant nonetheless is "required to give the court some notice of the nature of his or her proposed amendments." *Thomas*, 832 F.3d at 590.

Here, Roe requested leave to amend in the concluding paragraph of his response to the Government's second motion to dismiss.  He gave the district court no specific notice of the nature or contents of his proposed amendments, merely requesting a chance to amend if the court "should determine that more specificity is required."  We have previously held it was not an abuse of discretion for the district court to deny such a request.  *See*

---

[3] Roe asserts that his first two amended complaints were filed soon after he filed his original complaint to correct minor errors.  We accept this characterization, but it has no bearing on our decision.

*Goldstein v. MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003) (affirming denial of a "general curative amendment request" for leave as not an abuse of discretion when the party did not demonstrate how it would re-plead). While a *pro se* plaintiff should generally be given the chance to amend his complaint before it is dismissed, *see Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009), we are further convinced in this case that the district court did not abuse its discretion because Roe had the chance to amend, and did so, after the Government filed its first motion to dismiss, which contained essentially the same arguments contained in its second motion to dismiss. Where prior amendments failed to cure deficiencies in the pleadings, it is not an abuse of discretion to deny leave to amend further. *See Lowrey v. Tex. A&M Univ. Sys.,* 117 F.3d 242, 245 (5th Cir. 1997) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## V.

In sum, we AFFIRM the district court's dismissal of Roe's claims contained in counts 1-10, 12-14, and 16-18, either because they are time-barred, because Roe's complaint failed to state a claim, or because Roe forfeited the issue on appeal; we REVERSE the dismissal of Roe's claims contained in count 11 (malicious prosecution) and count 15 (civil conspiracy) because, reviewing the complaint before us, they are timely and Roe has stated a claim for which relief can be granted; and we REMAND for further proceedings.